JAMES JULIAN vs. FRANCIS RANDAZZO & another.

Middlesex. February 4, 1980. — April 15, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Arrest. Probable Cause. Evidence, Business record, Police report.*

In an action against two police officers for assault, assault and battery,
false imprisonment and negligent denial of medical care, the judge
erred in admitting in evidence, over the plaintiff's objection, a police
investigation report which included hearsay and the investigating offi-
cer's opinion and recommendation. [392-394]

In a tort action by a plaintiff who was mistakenly shot by a police officer
as the officer was pursuing an individual suspected of committing a
felony, there was no error in the judge's instructions with respect to the
question whether the officer was justified in using deadly force to ef-
fect an arrest. [394-397]

CIVIL ACTION commenced in the Superior Court on Au-
gust 4, 1976.

The case was tried before *Apkin,* J., a District Court
judge sitting under statutory authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Philip M. Weinberg* for the plaintiff.

*Robert J. Blumsack,* Assistant City Solicitor, for the de-
fendants.

BRAUCHER, J.   The plaintiff brought this tort action
against the defendant police officers for assault, assault and
battery, false imprisonment and "negligent denial of medi-
cal care."   A jury returned verdicts for the defendants, and
the plaintiff appeals, challenging the admission in evidence
of a police investigation report and the instructions to the
jury on the use of deadly force by a police officer.   We trans-

ferred the case from the Appeals Court to this court, and we uphold the plaintiff's evidentiary argument and reverse the judgments.

We summarize the evidence. The two defendants were Medford police officers. About 7 P.M. on July 5, 1976, while in a patrol car, they received a radio report of a hold-up in Malden. A short time later they began pursuit of three suspects in a Corvette automobile. A high speed chase ensued, in which shots were fired from the fleeing car. At an intersection in Cambridge, the Corvette "spun out" and stopped; the three suspects got out and ran, and the patrol car ran into the Corvette. The officers continued the chase on foot, and the defendant Randazzo fired his gun twice. The plaintiff, a bystander in front of his house, was hit in the elbow by a bullet. A little later each of the officers came up to the plaintiff, pointed a gun at him, and told him not to move; a neighbor persuaded the officers that the plaintiff was a bystander, and they continued their pursuit.

Several witnesses testified to the circumstances of the shooting. The defendant Randazzo testified that after he got out of the patrol car he yelled to the suspects to halt or he would shoot, that one of them stopped and aimed a pistol at him, that he fired two shots at the suspect, and that he first saw the plaintiff after resuming pursuit. Bystander witnesses testified that Randazzo gave no warning, that none of the suspects stopped and turned toward Randazzo, and that none of the suspects was carrying a gun. One by-stander testified that the suspects were out of sight before the defendants arrived at the scene; another testified that Randazzo fired while still in the patrol car. Estimates of time and distance varied. There was also ballistics testi-mony indicating that the bullet which struck the plaintiff's arm was not of the type used by the police.

1. *Police investigation report.* A police lieutenant testi-fied that he was assigned to make the usual investigation made when a police officer discharges his weapon, and his written report was admitted in evidence as a business record over the plaintiff's objection that it was the officer's opinion

based on hearsay and that its probative value did not balance the prejudice to the plaintiff. We think the objection was well taken.

The report contains a narrative account of the incident. In general that account agrees with Randazzo's account where his account differs from those of other witnesses. It concludes, "After an extensive study of this case it is my opinion that Officer Randzaao [*sic*] was justified in using his firearm. I recommend that no departmental action be taken." It is apparent that most of the narrative was supplied by police officers; the lieutenant testified that in preparing the report he spoke with the defendants, read their reports, interviewed the plaintiff and at least one of the other bystander witnesses, and had the assistance of other officers.

Many years ago, with respect to "public records," this court recognized a principle "that a record of a primary fact, made by a public officer in the performance of official duty is or may be made by legislation competent *prima facie* evidence as to the existence of that fact, but that records of investigations and inquiries conducted, either voluntarily or pursuant to requirement of law, by public officers concerning causes and effects involving the exercise of judgment and discretion, expressions of opinion, and making conclusions are not admissible in evidence as public records." *Commonwealth* v. *Slavski*, 245 Mass. 405, 417 (1923). That principle was applied in *Middlesex Supply, Inc.* v. *Martin & Sons*, 354 Mass. 373, 374-375 (1968), where the report of an assistant fire chief on the cause of a fire was held inadmissible as "opinion only." We think the same principle is applicable to evidence offered as a business record under G. L. c. 233, § 78. See *Sawyer & Co.* v. *Southern Pac. Co.*, 354 Mass. 481, 484 (1968); *Colvin* v. *United States*, 479 F.2d 998, 1002-1003 (9th Cir. 1973). Cf. *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 317 (1973). Thus the conclusion of the report in issue here, comprising the investigating officer's opinion and recommendation, was not admissible.

The defendants argue that any error in this respect did not affect the substantial rights of the plaintiff. The argument has force, since the jury were fully instructed that it was their task to decide whether the defendants' conduct was justified and that they were to judge police testimony by the same standards as the testimony of other witnesses. In view of the discrepancies in the eyewitness testimony, the aura of officialdom inherent in the report, and the fact that it was taken to the jury room during the jury's deliberations, however, we cannot say that the error was harmless. *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 317 (1973).

The question may arise on a new trial whether the police report is admissible if the investigating officer's opinion and recommendation are deleted. But the record before us does not permit us to rule on that question with confidence, since the bases for the report were not fully developed in the evidence. We have held police reports admissible as business records under G. L. c. 233, § 78. *Commonwealth* v. *Sellon*, *ante* 220, 230 (1980). *Commonwealth* v. *Walker*, 379 Mass. 297, 302 (1979). *Carey* v. *New Yorker of Worcester, Inc.*, 355 Mass. 450, 453 (1969). See Annot., 77 A.L.R.3d 115, 124-126 (1977). But statements in such a report made by bystanders may be inadmissible as "second level" or "totem-pole" hearsay. See *Commonwealth* v. *Walker*, 379 Mass. 297, 302 (1979), and cases cited; *Fagan* v. *Newark*, 78 N.J. Super. 294, 307-323 (1963); Advisory Committee's Note to Rule 803 (6) of the Federal Rules of Evidence, 56 F.R.D. 308-309 (1972). Moreover, there is authority that police reports should ordinarily be excluded when offered by the party at whose instance they were made. See *Bracey* v. *Herringa*, 466 F.2d 702, 705 n.9 (7th Cir. 1972); *United States* v. *Smith*, 521 F.2d 957, 964-968 (D.C. Cir. 1975), and cases cited. We do not now rule on the application of those authorities to the report before us.

2. *The privilege to arrest.* After charging the jury on self-defense, the judge gave a separate charge on the question whether the defendant Randazzo was justified in using deadly force to effect an arrest. He correctly defined deadly

force in the language we used in *Commonwealth* v. *Klein*, 372 Mass. 823, 827 (1977), and used substantially the language of § 120.7 of the Model Code of Pre-Arraignment Procedure (1975) summarized by us in the *Klein* case. See *id.* at 831 n.7. He also stated that "police officers have a right to arrest, without a warrant, any person whom [*sic*] they reasonably believe has committed a felony," explained the circumstances to be considered in passing upon whether the police officers had reasonable belief that a felony has been committed, and added that "if you find that the defendant was justified in using deadly force, then you should find for the defendant, even though the plaintiff was an innocent victim, as his injury was a result of an unfortunate accident."

At the close of the entire charge the plaintiff's counsel requested "an instruction on probable cause, not only as to the existence of the felony, but that the police officer had probable cause to arrest the person to whom the force was directed." He also requested the judge to give a more elaborate definition of excessive force and the factors to be considered in determining whether excessive force was used. The judge indicated that he had adequately covered both points, and gave no further charge.

There was no error. If the police had sufficient information to constitute probable cause to believe, and did believe, that a person had committed a felony, even though not in their presence, they had the right to arrest him without a warrant. *Commonwealth* v. *Snow*, 363 Mass. 778, 788 (1973), and cases cited. The burden was on the defendants to prove justification. They did not need to show that a felony had actually been committed; it was enough if they believed upon reasonable cause that the person being arrested had committed a felony. See *Muniz* v. *Mehlman*, 327 Mass. 353, 356 (1951), and cases cited. The judge's instructions clearly stated these principles. There is no requirement of probable cause to believe that the plaintiff, as the person injured, was a felon, unless he was the person being arrested.

We have said that the person attempting a valid arrest has the right to use the force which is reasonably necessary to overcome physical resistance by the person sought to be arrested; cases of physical resistance almost inevitably involve principles relating to self-defense.  See *Commonwealth* v. *Klein,* 372 Mass. 823, 832 n.8 (1977), and cases cited; Model Penal Code § 3.07, Comment 3 (Tent. Draft No. 8, 1958).  There was evidence in the present case, however, that would have warranted a finding that deadly force was used solely to prevent escape.  In the *Klein* case we announced, with prospective effect only, that in cases of arrest by a private person we shall limit the justification for the use of deadly force to prevent escape in accordance with Model Penal Code § 3.07.  *Id.* at 830-832.  We left open the question whether the same limitations apply to arrests by peace officers.  *Id.* at 830 n.6.  Cf. *Uraneck* v. *Lima,* 359 Mass. 749 (1971) (rejecting distinction between serious and nonserious felony).  See Annot., 83 A.L.R.3d 174 (1978).

In the present case, the conduct in question took place before our decision in the *Klein* case.  Nevertheless, we approve the action of the judge in charging the jury in accordance with § 120.7 of the Model Code of Pre-Arraignment Procedure (1975).[1]  The present case is not a criminal case, and the regulations of the Medford police department, placed in evidence by the defendants, gave adequate notice of the limitations placed on the use of deadly force to effect an arrest.

In this setting, the judge's charge properly informed the jury that an officer authorized to make an arrest may use "such force as is reasonably necessary to effect the arrest," and that the use of deadly force is subject to the additional

---

[1] "A law enforcement officer authorized to make an arrest . . . may use such force as is reasonably necessary to effect the arrest . . . .  The officer may use deadly force for these purposes only if (a) the arrest is for a felony; and (b) the officer reasonably believes that the force employed creates no substantial risk to innocent persons; and (c) the officer reasonably believes that: (i) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; or (ii) there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed."

limitations stated. It was within the judge's discretion to decide that the additional elaboration requested by the plaintiff as to what constitutes excessive force might have been confusing rather than helpful.

*Judgments reversed.* ·