DONALD A. WINGATE *vs.* EMERY AIR FREIGHT CORPORATION. March
27, 1981. Wingate, an employee of J.A. Jones Construction Company
(Jones Company), alleged that, on the premises of the defendant (Emery)
at Logan Airport, he was injured seriously as a result of the negligent con-
duct of an employee of Emery, when a box upon a push cart operated by
Emery's employee fell upon Wingate. The jury returned a verdict for
Emery on which judgment was entered. Wingate appealed.

Wingate objected to the introduction in evidence of Aetna Insurance
Company's copy of Jones Company's first report of injury to the Industrial
Accident Board and to Aetna under the Workmen's Compensation Act.
See G. L. c. 152, § 19, as amended through St. 1973, c. 438; Locke,
Workmen's Compensation §§ 412-413 (1968). The evidence was offered
solely for the limited purpose of impeaching Wingate's credibility. He
had testified that the accident occurred at Logan Airport. The first
report, in answer to the question "Location of plant or place where acci-
dent occurred," stated (1) that the accident occurred at "Brayton Point
Power . . . Station No. 4" in Somerset on Tuesday, December 31, 1974,
and (2) that, "[w]hile loading [a] heavy box onto [a] truck," Wingate
"felt pain r[ight] groin and leg." Before the evidence was admitted, there
was a voir dire examination of one Lord, an Aetna claim representative,
through whom the report was offered as a record made and kept in the
regular course of Aetna's business. See G. L. c. 233, § 78, as appearing in

St. 1954, c. 442, § 1; Leach & Liacos, Massachusetts Evidence 234 et seq. (4th ed. 1967); Hughes, Massachusetts Evidence §§ 592 et seq. (1961); 5 Wigmore, Evidence §§ 1522, 1530, & 1561a (Chadbourn rev. 1974).

The trial judge found that the first report of injury was a record kept in good faith by Aetna before the actions were commenced on November 15, 1977; that it was Aetna's practice (on the date, January 13, 1975, when the report was stamped) to keep such records; that the report was not prepared by Aetna or any of its employees; and that no Aetna employee assisted in preparing it. The judge relied on *Sawyer & Co.* v. *Southern Pac. Co.*, 354 Mass. 481, 483 (1968), which was a case in which United States Department of Agriculture inspection certificates (of cantaloupes as free of defect) were admitted as business records under G. L. c. 233, § 78, a statute which we recognize should be interpreted liberally to permit the receipt of relevant evidence.

The first report was signed in behalf of Jones Company by Louis B.J. Belmont, Safety Supervisor (so far as an illegible signature can be deciphered). No such officer has been shown to have been called as a witness. Wingate denied having talked with anyone named Belmont or knowing such a person. Counsel for Emery referred to no witness from (or employed by) Jones Company who testified to the source of the information recorded in the first report or to any statement by Wingate made to any person either employed by Jones Company or involved in preparing that report. One Freitas, mentioned in the report as Wingate's foreman (although Wingate testified Freitas was not a foreman), is not shown to have been called as a witness. There thus is no direct proof that Wingate ever made a statement to anyone that the accident took place at Brayton Point Power Station as reported in the first report. If there had been such proof, it was incumbent on Emery to request Wingate's counsel to include the appropriate transcript pages in the record appendix. See Mass.R.A.P. 18(b) as appearing in 378 Mass. 940 (1979).

To impeach Wingate's testimony at trial by proof of a prior inconsistent statement, in fairness there should be proof that he made, or took responsibility for, such a prior statement. See *Phillips* v. *Marblehead*, 148 Mass. 326, 329 (1889); *Healey* v. *Wellesley & Boston St. Ry.*, 176 Mass. 440, 441 (1900); *Robinson* v. *Old Colony St. Ry.*, 189 Mass. 594, 596 (1905); 3A Wigmore, Evidence §§ 1017-1018, & 1040, especially at 1051 n.8 (Chadbourn rev. 1970). See also *Priest* v. *Groton*, 103 Mass. 530, 542 (1870); McCormick, Evidence §§ 34-37 (2d ed. 1972); Leach & Liacos, Massachusetts Evidence 113-119; Hughes, Massachusetts Evidence §§ 232-235 (1961). The mere fact that Aetna has in its business records a first report of injury to it as Jones Company's workmen's compensation carrier does not in and of itself report, or purport to report, any statement by or attributed to Wingate, or for which he assumed responsibility. The first report does not disclose the source of the information therein set out, although the existence of that first report has some tendency to show that

the information therein contained may well have come from Wingate directly or indirectly. See 5 Wigmore, Evidence § 1530, at 450-451 (Chadbourn rev. 1974). It is not even shown that Freitas (described as Wingate's foreman) made a report to Belmont who signed the first report, or that Wingate made a report to Freitas. The report in any event suggests strongly that it is based on and contains inadmissible second level hearsay. *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 315-317 (1973). See *Reed* v. *Canada Dry Corp.*, 5 Mass. App. Ct. 164, 166-167 (1977). See also *Julian* v. *Randazzo*, 380 Mass. 391, 392-394 (1980). Compare *Commonwealth* v. *Walker*, 379 Mass. 297, 302 (1979).

We conclude that the first report did not reflect sufficiently and unambiguously any proved prior statement by Wingate so that it reasonably could be used to impeach his explicit testimony at trial as to the place of the accident. It should have been excluded. Its admission was not rendered harmless by the trial judge's instruction to the jury that it was for them to determine whether it contained a statement made by Wingate to his employer or to his employer's representative.

We need not consider whether the first report (despite efforts to "sanitize" it by removal of any indication that it had been used for workmen's compensation purposes) also should have been excluded because it might suggest that Wingate had received workmen's compensation or because of any policy against receiving such reports. See *Gerry* v. *Worcester Consol. St. Ry.*, 248 Mass. 559, 566-568 (1924); *Benson* v. *Guyette*, 350 Mass. 759 (1965); *Goldstein* v. *Gontarz*, 364 Mass. 800, 807-810 (1974); *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 665-666 (1980). See also *West* v. *Molders Foundry Co.*, 342 Mass. 8, 9-10 (1961).

*Judgment reversed.*

*Ephraim F. Horvitz* for the plaintiff.
*Thomas P. Crotty* for the defendant.