DONALD A. WINGATE vs. EMERY AIR FREIGHT CORP.

Bristol. November 2, 1981. — March 2, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Evidence*, Hearsay, Business record, Prior inconsistent statement.

In a tort action brought by a plaintiff employee against a third party, evidence did not warrant an inference that the content of a report of the plaintiff's injury, made by the employer to its insurer and admitted in evidence by the judge as an inconsistent prior statement of the plaintiff, was attributable to the plaintiff. [405]

In a tort action brought by a plaintiff employee against a third party, the employer's report of the plaintiff's injury was inadmissible under the business records exception to the hearsay rule, G. L. c. 233, § 78, where there was no evidence that the plaintiff or anyone else with personal knowledge and a duty to report had relayed the information to the preparer of the report or to someone under a duty to inform the preparer of the report, so that the intermediary's statement would itself be a part of the business record-keeping process. [405-408] LIACOS, J., concurring.

CIVIL ACTION commenced in the Superior Court on November 15, 1977.

The case was tried before *Ponte*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Ephraim F. Horvitz* for the plaintiff.

*Charles R. Desmarais* for the defendant.

HENNESSEY, C.J. This appeal concerns the circumstances under which an employer's report of injury, containing an account of an accident that resulted in injury to an employee, may be introduced in evidence, despite its hearsay nature, in a tort case brought by the plaintiff employee against a third party. We agree with the Appeals Court's conclusion that the admission of the report in this case was prejudicial error, and reverse the judgment in favor of the defendant Emery

Air Freight Corp. (Emery) entered in the Superior Court. 11 Mass. App. Ct. 982 (1981). In so doing, we define certain limits in the application of G. L. c. 233, § 78, the so-called business records statute.[1]

The plaintiff was employed by the J.A. Jones Construction Company (Jones Company) in Somerset, Massachusetts. He testified at trial that he had been injured at the Logan International Airport premises of Emery while accepting a delivery for Jones Company. According to the plaintiff, his injury occurred when an Emery employee negligently caused a crate to strike him and knock him down. Emery denied any knowledge of the accident, and gave evidence tending to show that the accident had not happened at Emery's loading docks as alleged by the plaintiff.

Among the items of evidence offered by Emery was an "Employer's First Report of Injury," prepared by Jones Company pursuant to G. L. c. 152, § 19, and produced from the files of the Jones Company's workmen's compensation insurer.[2] The report stated that the accident had occurred at the Jones Company's place of business in Somerset. It described the cause of injury as "heavy object," and contained the notation "[w]hile loading heavy box onto truck felt pain r[ight] groin and leg." The report was signed by one Louis B.J. Belmont, as preparer.

---

[1] General Laws c. 233, § 78, as amended by St. 1954, c. 442, § 1, reads in pertinent part: "An entry in an account kept in a book or by a card system or by any other system of keeping accounts, or a writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter."

[2] General Laws c. 152, § 19, provides that employers must keep records of all injuries sustained by employees in the course of employment, and must file reports of such injuries with the division of industrial accidents. The "First Report" offered by Emery was the insurer's copy of a report that the Jones Company presumably had filed with the division.

On voir dire, Emery called as a witness an employee of the Jones Company's insurer. This witness testified that he had no knowledge of the preparation of the report, but that the insurer regularly received such reports from employers. The preparer, Louis Belmont, did not appear, and no further evidence was received. The judge found that the report was "a record kept in good faith in the regular course of business of [of insurance company]," and otherwise satisfied the statutory business records exception to the hearsay rule, G. L. c. 233, § 78, and that it "was not prepared by any person employed by [the insurance company]."[3] As requested by Emery, the judge admitted the report only for the purpose of impeachment of the plaintiff's testimony.

The plaintiff objected on the ground that he had not participated in the preparation of the report. He admitted that he had told someone at Jones Company about his accident, but testified that he had not spoken to, and in fact had never met, Louis Belmont. This testimony was not contradicted. In his final charge, the judge instructed the jury that, if they determined that the plaintiff had made the statements contained in the report to the preparer, they should consider the report as an inconsistent statement casting substantial doubt on the plaintiff's credibility. If, however, they found that the plaintiff had not related the information to Belmont, they should not consider the report as evidence of inconsistency in the plaintiff's "stories."

The jury returned a verdict for Emery, and the plaintiff appealed. The Appeals Court reversed the judgment, reasoning that in the absence of proof that the information in the report reflected statements made by the plaintiff directly to the preparer, the admission of the report was prejudicial error. *Wingate* v. *Emery Air Freight Corp.*, 11 Mass. App. Ct. 982, 984 (1981). We granted Emery's request for further appellate review.

---

[3] The plaintiff objected that the statutory exception depends on the regular course of business of the *preparer* — here Jones Company — and that the *insurer's* practices were irrelevant. However, because the plaintiff has not pressed this objection on appeal, it is not before us.

The report clearly constituted hearsay evidence, and just as clearly was admitted in evidence by the judge on two grounds: that it was an inconsistent prior statement of the plaintiff, and was a business record within the statutory meaning.

We dispose quickly of the premise that the report contained a prior inconsistency.[4] The evidence did not warrant an inference that the content of the report was attributable to the plaintiff. He denied that he had talked with Belmont, and he denied that he had made the statement contained in the report. His mere testimony that he had told his story to some person at the company was not sufficient to charge him with the version of the facts shown in the report.[5]

We turn now to the issue whether the report was admissible under the business records statute. Generally, evidence based on a chain of statements is admissible only if each out-of-court assertion falls within an exception to the hearsay rule. *Bouchie* v. *Murray*, 376 Mass. 524, 527-531 (1978). McCormick, Evidence § 246, at 585-586 (2d ed. 1972). See Fed. R. Evid. 805; Proposed Mass. R. Evid. 805. Since, in this case, there was no evidence to show that any statement by any person was within any other exception to the hearsay rule, our remaining inquiry relates to the business records statute.

---

[4] The judge's limitation of the evidence to the issue of credibility was consistent with the attitude of the parties. Although the witness whose credibility was at stake was the plaintiff, a party to the action, both parties treated the report as a prior inconsistent statement rather than an admission, and have continued this characterization on appeal.

[5] We do not have before us a complete record of the trial. Emery argues that the plaintiff cannot advance an argument based on the sufficiency of the evidence when he has not produced a full record on appeal. See *Old Colony Trust Co.* v. *Shaw*, 348 Mass. 212, 216 (1964). However, the record does include the bench conference and voir dire examination relating to the report, the submission of the report to the jury, and the plaintiff's rebuttal testimony. It appears, therefore, that "all the evidence material to the issue," *id.*, is before us. If Emery wished to rely on relevant facts brought out in other portions of the trial (and it has not suggested that any such facts exist), it should have requested that the plaintiff include them in the record. See Mass. R. A. P. 18 (b), as amended, 378 Mass. 940 (1979).

General Laws c. 233, § 78, states that a record made in
the regular course of business "shall not be inadmissible be-
cause . . . it is hearsay." Such a record is presumed to be
reliable and therefore admissible because entries in these
records are routinely made by those charged with the re-
sponsibility of making accurate entries and are relied on in
the course of doing business. McCormick, *supra* § 306, at
719-721. See *Bouchie* v. *Murray, supra* at 528. The statute
makes clear that the record is admissible even when the pre-
parer has relied on the statement of others, by providing
that "personal knowledge by the entrant or maker" is a
matter affecting the weight (rather than the admissibility)
of the record. See *Commonwealth* v. *Kiley,* 373 Mass. 454,
462 (1977); *Sawyer & Co.* v. *Southern Pac. Co.,* 354 Mass.
481, 484 (1968).

It does not follow, however, that the preparer may rely
on statements that are not themselves a part of the regular
course of business record-keeping. The preparer's hearsay
sources must carry the same indicia of reliability, arising
from regularity and business motives, that bring his own act
of recording the information within the statutory exception.
Thus, unless statements on which the preparer relies fall
within some other exception to the hearsay rule, the proponent
must show that all persons in the chain of communication,
from the observer to the preparer, reported the information
as a matter of business duty or business routine. See *Com-
monwealth* v. *DeBrosky,* 363 Mass. 718, 724-725 & n.6
(1973); *United States* v. *Burruss,* 418 F.2d 677, 679 (4th Cir.
1969); *Fagan* v. *Newark,* 78 N.J. Super. 294, 319 (1963);
McCormick, *supra* § 310, at 726-727. Cf. *Saba* v. *Cohen,*
333 Mass. 557, 558-559 (1956) (records transcribed from
other records, also apparently made in ordinary course of
business). Ordinarily this can, of course, be accomplished
by presenting evidence of normal business practice, with no
need to produce each speaker.

If the original source of the information was not an em-
ployee with "eyewitness" knowledge or similar "personal
knowledge," reliability is lacking. Further, if the original

source of information did not have a business interest to report accurately, reliability is lacking. Thus, the statute makes admissible a business record which results from reports, passing through any number of people, so long as each person had a duty to report, and the information originally came from an employee with personal knowledge who also had a duty to report. Then, and only then, are there the necessary indicia of reliability. Only then may a record be substituted for the direct testimony of the employee with personal knowledge.

Inferences were probably warranted that an employee of Jones Company had a duty to report an injury incurred by him while working, and that such reports were made in the regular course of business. However, as noted above, there was no evidence that the plaintiff told his story directly to Belmont. Of course it might have been shown that a fellow employee of the plaintiff was an eyewitness to the accident, and had a duty to report, but there was no evidence of any such eyewitness. In any event, there was no evidence that the plaintiff or anyone else with personal knowledge and a duty to report had relayed the information to the preparer of the record or to someone under a business duty to inform the preparer of the record, so that the intermediary's statement would itself be a part of the business record-keeping process.

The admission of the report cannot be regarded as harmless error. See G. L. c. 231, § 119; *Bouchie* v. *Murray*, 376 Mass. 524, 530 (1978); *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 317 (1973). As Emery points out, there was other evidence suggesting that the accident did not take place on Emery premises and was not caused by the negligence of Emery employees. However, none was attributable to the plaintiff himself. Moreover, the report was a written document, highly damaging to the plaintiff's credibility. Not only was it read in its entirety to the jury, but the jury were permitted to study it in the jury room. Therefore, reversal and a new trial are required. It follows that we need not consider other contentions, relating to the privileged nature

of first reports and to possible prejudice arising from a refer-
ence to insurance coverage, that the plaintiff has advanced
in support of reversal.

The judgment is reversed, the verdict set aside, and the
case remanded to the Superior Court for a new trial.

*So ordered.*

LIACOS, J. (concurring). I agree with the result reached
by the court in this case. While I agree also with the reasons
stated by the court, a few additional words may be helpful
to a fuller understanding of the statutory business records
exception to the hearsay rule.

When a document is offered as being within the hearsay
exception created by G. L. c. 233, § 78, it is important to
keep in mind that there are apt to be two major problems to
be faced in determining its admissibility. The first question
is whether the writing itself qualifies as a "business record"
within the terms of G. L. c. 233, § 78. Certain preliminary
findings must be made by the trial judge before this first
obstacle to admissibility can be satisfied. See *Household
Fuel Corp.* v. *Hamacher*, 331 Mass. 653 (1954). Cf.
*Bouchie* v. *Murray*, 376 Mass. 524, 527-528 (1978) (dealing
with G. L. c. 233, § 79, pertaining to the admissibility of
hospital records). P.J. Liacos, Massachusetts Evidence 330
(5th ed. 1981). It is clear that unless the writing qualifies as
within the "business records" exception to the hearsay rule,
neither it nor anything contained in it is admissible.

If the first obstacle to admissibility is overcome, then and
only then, does the second question possibly arise. That
question is whether all or only some of the material and in-
formation contained in the document qualifies as being
within the scope of the statutory exception.

To illustrate these preliminary points by way of example,
a document would not be admissible under G. L. c. 233,
§ 78, if it was not made "in good faith . . . before the begin-
ning of the civil or criminal proceeding" in which it is offered.

Contrast Fed. R. Evid. 803 (6) which has no such require-
ments. Failure of the proponent to satisfy these prerequisites
to admissibility (among others) would mean the document
fails to qualify on the first level of inquiry. On the other
hand, a document which qualified as a business record would
not be admissible to establish a statement of opinion con-
tained in it. *Julian* v. *Randazzo*, 380 Mass. 391, 393 (1980).
Contrast Fed. R. Evid. 803(6) (opinions in business records
are admissible). This is true because, even though the docu-
ment may otherwise be admissible, that portion of it con-
taining the opinion statement is not. Thus, at the second
level of inquiry, the statement of opinion, at least, would
have to be excised.

In my view, the problem the court addresses (as to the
source of the information in the business record) goes to the
second question, not the first. Although I agree with the
court's statement (*supra* at 404 n.3), that the issue has not
been briefed, I believe it would be helpful to point out that
the report offered here did not qualify, at the threshold, as a
business record of the workmen's compensation insurer.[1]

General Laws c. 233, § 78, provides for the admissibility
of a record "*made* . . . in the regular course of business"
where it is shown that "it was the regular course of *such*
business *to make* such memorandum or record" (emphasis
supplied). The insurer did not "make" this record, it simply
received it. The significance of this distinction is found in
the historical background of the enactment of G. L. c. 233,
§ 78, and comparable statutes in other jurisdictions.

The common law rules of exception to the hearsay rule re-
garding business records were wholly inadequate to meet
the needs and realities of a modern industrial and commer-
cial society. 5 J. Wigmore, Evidence §§ 1521, 1522, 1561a,
1561b (Chadbourn rev. 1974). Wigmore stated well the
reasoning that led to the enactment of statutes such as G. L.

---

[1] I am authorized to state that the other members of the quorum, in-
cluding the author of the court's opinion, join in the views expressed in
this opinion. They believe, however, that such views need not be includ-
ed in the court's opinion because the issue was not briefed by the parties.

c. 233, § 78. Such statutes were enacted as a consequence of judicial inability to reform the strictness of the common law rule.

Speaking of business records Wigmore wrote: "Such entries are dealt with . . . in the most important undertakings of mercantile and industrial life. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise. . . . It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited, by courts of justice. . . . The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical." 5 J. Wigmore, *supra* § 1530, at 452.

The courts did not, as a whole, respond to Wigmore's plea, but legislatures did. Keeping the object of such legislation in mind, it is clear that business enterprises rely on records they *make* to the extent those records reflect, as the court points out, information based on personal knowledge of its own employees who have a business interest to report accurately. The injury report received by the insurer has none of these indicia of reliability. Hence, it is not a business record admissible by virtue of G. L. c. 233, § 78.[2]

---

[2] Whether it would be a business record of the plaintiff's employer is not before us because it was not offered or received as such. Whether it would be inadmissible in any event by virtue of the privilege stemming from G. L. c. 152, § 19, see *Gerry* v. *Worcester Consol. St. Ry.*, 248 Mass. 559,.566-567 (1924), is a question we need not reach. Nor do I make an implication that reports pertaining to accidents are generally inadmissible as business records. See *Julian* v. *Randazzo*, 380 Mass. 391, 394 (1980); *Commonwealth* v. *Walker*, 379 Mass. 297, 302 (1979); *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313 (1973). As the court points out, if the report is assumed to be a business record then second level hearsay contained in it would still be inadmissible unless a second level exception to the hearsay rule is found applicable.