MARTIN WIIK vs. AMINUDDIN RATHORE & another.[1]

Middlesex.    December 11, 1985. — January 8, 1986.

Present: GRANT, KAPLAN, & KASS, JJ.

*Evidence*, Expert opinion, Hearsay, Business record, Prior inconsistent statement.

At the trial of a medical malpractice action against a surgeon and an anes-
thetist during which the plaintiff's family physician testified that he had
no opinion as to the cause of an injury to the plaintiff's arm and that
during an office visit he had not told the plaintiff how the injury had
occurred, the physician's record of the office visit, containing a statement
that the plaintiff was informed that his injury had resulted from improper
positioning of his arm during surgery, was properly admitted for impeach-
ment purposes only, as the hearsay statement of opinion was not admis-
sible as a business record under G. L. c. 233, § 78. [401-402]

At the trial of a medical malpractice action against a surgeon and an anes-
thetist during which the plaintiff's family physician testified that he had
no opinion concerning the cause of the plaintiff's injury and that during
an office visit he had not told the plaintiff how the injury had occurred,
the judge properly excluded testimony by the plaintiff that during the
office visit his physician had told him the cause of his injury, where the
testimony was offered for substantive purposes, rather than merely as a
prior inconsistent statement by the physician. [402-403]

At the trial of a medical malpractice action the judge did not err in excluding
a record of a telephone conversation between the plaintiff's family physi-
cian and a disability claims examiner at the Massachusetts Rehabilitation
Commission containing an opinion as to the cause of the plaintiff's
injury. [403]

CIVIL ACTION commenced in the Superior Court Department
on August 14, 1981.

The case was tried before *Robert J. Hallisey*, J.

*Neil Rossman* for the plaintiff.

*Laurence J. Bloom* for Aminuddin Rathore.

*Philip E. Murray, Jr.*, for Susan M. Cid Espanola.

[1] Susan M. Cid Espanola.

KAPLAN, J.   On September 22, 1978, the plaintiff, Wiik, underwent a retropubic prostatectomy at Nashoba Community Hospital with the defendant Dr. Rathore as surgeon, and the defendant Dr. Espanola as anesthetist. In its main purpose, the operation was successful. Subsequently, however, the plaintiff complained of loss of sensation in the fourth and fifth fingers of his left hand, evidently the manifestation of an ulnar nerve palsy. He brought the present action charging the defendants with having caused the condition by reason of their negligent practice in the conduct of the operation. More specifically, the plaintiff's claim was that his left arm was improperly positioned while he was under anesthesia on the operating table, with the result that the relevant nerve system was unduly compressed or stretched and thereby damaged.[2] (The plaintiff was an auto mechanic who had to work constantly with his hands.)

This medical malpractice action was fully tried in April-May, 1984, with testimony by the parties and by experts on either side. The jury found for the defendants.[3] From the judgment, and the denial of his postverdict motion for a new trial, the plaintiff takes his appeal to this court. His chief contention is that the judge erred in dealing with the testimony by Dr. Gary H. Asher, the plaintiff's family physician, called as a witness on the part of the plaintiff.

After an episode of acute urine retention for which he was treated at Nashoba Hospital emergency, the plaintiff in early September, 1978, was examined by Dr. Asher, who concluded that he was suffering from an enlarged prostate and advised him to see Dr. Rathore, a urologist. Dr. Rathore recommended the operation that was carried out on September 22. Dr. Asher attended the operation, serving for a fee as an assistant to Dr. Rathore at the latter's request (the usual arrangement when

---

[2] The plaintiff's right arm was at his side; his left arm was extended on a padded board, palm up, at an angle of about ninety degrees from his body and was not taped down. The table was slightly tilted during the operation with a chance that the arm would shift upward to make a somewhat obtuse angle to the line of the lower body.

[3] On counts for injuries due to malpractice and for reimbursement of medical expenses.

Dr. Rathore was operating on a patient referred to him by Dr. Asher). At a visit to Dr. Asher's office on October 16, the plaintiff complained of numbness which suggested to Dr. Asher a contusion of the left ulnar nerve. On October 20, the plaintiff had an office visit with Dr. Rathore; Dr. Rathore said the condition would probably go away in three months. Later, in January, 1979, Dr. Rathore suggested that the plaintiff call on Dr. Anthony R. M. Caprio, an orthopedic surgeon. Dr. Caprio's entry on his records of an examination of the plaintiff on January 22, 1979, recited that the plaintiff noticed numbness "[a]fter he woke up from anesthesia" on September 22;[4] "Impression: Ulna [*sic*] nerve palsy." A copy of this entry was sent to Dr. Asher.

1. We now approach Dr. Asher's testimony about a visit to his office on April 30, 1979. First we note that Dr. Asher, in the course of his testimony, stated that he observed nothing unusual, that he was aware of no problem, during the surgery; that "[i]ndependent of Dr. Caprio," he did not feel he was competent to form an opinion about the cause of the plaintiff's condition; and that he did not know what caused the condition. However, counsel for the plaintiff sought to get in evidence Dr. Asher's entry for the April 30 visit which, besides noting the copy of the report received from Dr. Caprio, and stating that the condition was "Ulnar nerve palsy, questionably getting a little better," went on to say: "Patient is informed that this is an unfortunate complication of his surgery from lying on the table with his arm in the wrong position and should not have happened." But, responding to the question whether he had told the plaintiff on April 30 how the injury occurred, Dr. Asher answered, "No." Plaintiff's counsel then offered Dr. Asher's quoted entry of April 30 (especially the second quoted part). This was received only as a prior inconsistent statement bearing on Dr. Asher's credibility, not as proof of the substance of the entry itself.[5]

---

[4] There was testimony that the plaintiff while at the hospital complained to a nurse about pains in both hands.

[5] "Patient is informed" might well be read as — Patient has already been informed by another. However, the parties seem to have gone on the assumption that the phrase meant that Dr. Asher informed the patient.

Counsel contends that the judge erred in declining to allow full probative effect to Dr. Asher's entry.[6] We think the judge was right. The entry was a statement of opinion (at the very heart of the quarrel upon which expert testimony was called on both sides). Contrast *Diaz* v. *Eli Lilly & Co.*, 14 Mass. App. Ct. 448, 452-453 (1982) (routine reporting of facts or diagnoses routinely made in hospital). Being an extrajudicial statement, the entry was hearsay and not admissible as proof of its content except by way of an exception to the general exclusionary rule. Counsel points to the exception embodied in G. L. c. 233, § 78, regarding records made in the regular course of business. Recent decisions demonstrate that the statute does not extend to the opinions of the preparer of the record (and in the present case, we may add, a preparer who himself conceded that he was not competent to give an opinion on such a matter). *Julian* v. *Randazzo*, 380 Mass. 391, 393 (1980). See *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 409 (1982) (concurring opinion); *Kelly* v. *O'Neil*, 1 Mass. App. Ct. 313, 317 (1973).

Finally, counsel suggests, in effect, that it is time to get rid of the traditional confinement of prior inconsistent statements to a role merely as impeaching credibility. This would involve a far-reaching projection of *Commonwealth* v. *Daye*, 393 Mass. 55, 65-75 (1984),[7] and in a situation quite unattractive for such an innovation, whatever might be thought of the merits of the suggested change as a general proposition. We have to note, further, that, given Dr. Asher's disclaimers both of observing anything amiss during the surgery and of having any expert competence, we doubt that admitting his entry as probative would have made any difference in the jury verdict.

2. Counsel offered to show through testimony by the plaintiff himself that, as indicated in Dr. Asher's entry of April 30, Dr. Asher had told him of the supposed cause of his injury. Intended somehow to enhance the entry and allow its admission .

---

[6] In the course of the trial and also in his instructions the judge took pains to advise the jury about the difference between impeachment of credibility and actual proof.

[7] Allowing use of prior inconsistent grand jury statements as probative evidence.

as proof (rather than merely as a prior inconsistent statement by Dr. Asher), the offer could not be justified, and was properly rejected by the judge.

3. A disability claims examiner at the Massachusetts Rehabilitation Commission on November 9, 1979, had a conversation by telephone with Dr. Asher about the plaintiff's condition and made a record of Dr. Asher's statement.[8] The judge properly refused the offer of this entry, of which the critical part was: "Ulnar nerve palsy. Secondary to anesthesia for prostate operation 9/22/78." This was no more admissible as proof than the proposed testimony of the plaintiff discussed immediately above. The attempt to invoke G. L. c. 233, § 78, also fails if for no other reason than that the record embodied (incompetent) opinion. And see also, as to "second level" hearsay, *Julian* v. *Randazzo*, 380 Mass. at 394; *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. at 406-407; 409-410 (concurring opinion); *Kelly* v. *O'Neil*, 1 Mass. App. Ct. at 316-317 (1973). Cf. *Irwin* v. *Ware*, 392 Mass. 745, 748-751 (1984); *Commonwealth* v. *Hussey*, 14 Mass. App. Ct. 1015, 1016 (1982).

4. Criticism of the judge for not giving certain instructions in the form tendered by the plaintiff is unimpressive. The instructions given were adequate and the action as a whole was conducted with care.

*Judgment affirmed.*

---

[8] Such information is gathered in connection with social security claims.