Hershfang, J.
To recover on an insurance policy issued by the defendant, United States Fidelity and Guaranty Corp., plaintiff had to establish that the motor vehicle covered by the policy had been stolen. The plaintiff attempted to prove the theft, over appropriate claim of report, solely by the introduction of multiple levels of (or “totem-pole”) hearsay. Because the evidence was devoid of trustworthiness we allow the report and find for defendant.
THE FACTS
Donard McGuigan (“McGuigan”) bought a 1988 Ford F250 pickup truck on May 4, 1988 for $12,500. Financing was provided by the plaintiff, Ford Motor Credit Corp., (“lender”). The vehicle was insured by the defendant, United States Fidelity and Guaranty Corporation (“insurer”).
Less than a year after the initial purchase, McGuigan became unable to make the monthly payment on the note, and, seeking to relieve himself of the debt, relinquished possession of the vehicle to Stockbridge Capital Corporation (“Stock-bridge”). Stockbridge sought a qualified buyer to assume the monthly payments under a “lease/purchase agreement,” and, on April 19,1989, Stockbridge turned the vehicle over to David L. Brooks who agreed to make payments to lender under the same financing agreement. Insurer had issued a policy of insurance to Brooks. McGuigan was added as a second insured and lender was named a lienholder and loss payee.
After the transfer of the vehicle to Brooks, not a single payment was made, either by McGuigan or by Brooks. Within two months of Brooks’ getting the vehicle, on July 18, 1989, someone told lender that the vehicle was stolen while on loan to a friend of Brooks. No report of that alleged theft was ever filed by Brooks,[2] nor did lender file a formal proof of loss within thirty days of receipt of such information, as required by the policy.[3] On August 4, 1989 lender did telephone insurer about the alleged theft, which by then had been reported to the insurer by either Brooks or Stockbridge. Brooks’ claim of loss was denied because of his failure to make a report of the alleged loss to insurer and to the New Bedford Police Department.
*47 Only lender (plaintiff) and insurer (defendant) participated at trial. Neither Brooks nor Stockbridge attended. Nor did Brooks’ unidentified ‘friend,’ the person who was said to have been in possession of the vehicle when the theft allegedly occurred. Instead, to establish the theft, over insurer’s objection and proper claim of report, lender filed the “hard copy” of its computer records. The “hard copy” is essentially a ledger kept by lender to record, in summary form, an itemization of its internal activities and the substance of telephone conversations with customers and claimants. The relevant portion of the “hard copy” record for July 18,1989, on which plaintiff relies to prove the theft, reads as follows:
CS SD C MET LAST NIGHT WITH DAVID BROOKS WHO RECEIVED VEHICLE FROM STOCKBRIDGE CAPITAL. DAVID BROOKS TOLD C THAT VEHICLE WAS STOLEN AND HE TOLD STOCKBRIDGE CAPITAL. DAVID BROOKS SD STOCKBRIDGE CAPITAL TOLD HIM NOTTO REPORT VEHICLE AS STOLEN TO POLICE. CS SD DAVID BROOKS HAS INSURANCE
The quoted record is translated to say this:
The customer [McGuigan] said he met last night with David Brooks. Brooks had received the vehicle from Stockbridge. Brooks told McGuigan that the vehicle had been stolen and he [had] told Stock-bridge of the theft. Brooks said Stockbridge told him not to report the vehicle as stolen to the police. McGuigan said Brooks has insurance.
Put differently, plaintiff’s sole evidence that a theft had occurred is plaintiff’s record of McGuigan’s report of what Brooks had told him.
Plaintiff was permitted, over a claim of report, to introduce the quoted data. The trial judge correctly ruled that plaintiff had the burden to establish a prima facie case that a loss occurred within the coverage of the policy (here, a theft). Markline Co. v. The Travelers Ins. Co., 384 Mass. 139, 140 (1981). Based on the quoted record (together with similar but not additional data contained in other “hard copy” records of the plaintiff) the trial judge determined that plaintiff had established that prima facie case. Judgment was thereafter entered for plaintiff lender against defendant insurer for $9,500.
While defendant’s claim of report has three parts,[4] we need focus on but one of them, we begin by reference to the statute relied on by plaintiff which allows into evidence “business records” hearsay.
THE STATUTE
G.L.c. 233, §78 provides, in relevant part, as follows:
An entry in an account kept in a book or by a card system or by any other system of keeping accounts, or a writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated because it is hearsay or self-serving, if the court finds that the entry, writing or record was made [11 in good faith [2] in the regular course of business and [31 before the beginning of the civil or criminal proceeding aforesaid and [41 that it was the resallar course of such business to make such memorandum or record at the time of such act, trans *48 action, occurrence or event or within a reasonable time thereafter. (emphasis and enumeration added).
On the face of it, the four numbered requirements could be found to have been satisfied here, i.e., that (1) the quoted entry was made in good faith; (2) in the regular course of business; (3) before the beginning of this civil proceeding, and (4) that it was the regular course of plaintiffs business to make such a record contemporaneous with or soon after receipt of the news conveyed. But determining if a record can be relied on cannot be undertaken in a mechanical way.
The common law exceptions to the hearsay rule in almost every case are based on two elements: (1) a strong necessity for the evidence the rule would otherwise exclude and (2) a guarantee of trustworthiness in the circumstances surrounding the making of the particular declaration for which an exception is created.” LIACOS, MASSACHUSETTS EVIDENCE, §8.4, at 445 (6th ed. 1994) (emphasis added).
Wigmore, whose plea for the business records exception to the hearsay rule was heeded by various legislatures, See, Wingate v. Emery Air Freight Corp., 385 Mass. 402, 409-410 (Liacos, J. concurring) (1982), obviously based his confidence in the accuracy of business records on their implicit trustworthiness.
In general, it is thought that the regularity of habit, the difficulty of falsification and the fair certainty of ultimate detection, give in a sufficient degree a probability of trustworthiness. The particular element of self-interest and partisanship that might be supposed to diminish trustworthiness in the case of a party himself is supposed to be balanced by certain additional requirements... for example the existence of a reputation for honest bookkeeping, fair appearance of the books, and the like. 5 J. WIGMORE, EVIDENCE §1546, at 471 (3rd ed. 1974).
Thus, a business record may call for further scrutiny. See, Dimarzo v. American Mutual Ins. Co., 389 Mass. 85, 105-106 (1983), and where the business record is a hearsay report it calls for even more scrutiny.
It does not follow... that the preparer may rely on statements that are not themselves a part of the regular course of business record-keeping. The preparer’s hearsay sources must carry the same indicia of reliability. arising from regularity and business motives, that bring his own act of recording the information within the statutory exception. Thus, unless statements on which the preparer relies falls within some other exception to the hearsay rule, the proponent must show that all persons in the chain of communication, from the observer to the preparer, reported the information as a matter of business duty or business routine. Wingate v. Emery Air Freight, 385 Mass. 402, 406 (1982) (emphasis added).
To like effect see, LIACOS, HANDBOOK OF MASSACHUSETTS EVIDENCE, §8.11,488 (6th Ed. 1994).
In the “indicia of reliability” test plaintiffs “hard copy” fails. The only evidence of a theft of the vehicle is through the unverified assertion of McGuigan, who says that Brooks told him the vehicle was stolen while on loan to an unnamed, never produced third party. McGuigan and Brooks not only have no reason to be honest, the noted basis of the statutory exception; each had every reason to fabricate. McGuigan could not pay his debt on the vehicle and had to surrender it Brooks took possession of the vehicle and contracted to assume the monthly payments but never paid a penny on it. McGuigan’s verbal report of a theft, if believed, would allow himself and Brooks (and, perhaps, Brooks’ unnamed friend) to avoid paying for the vehicle. Thus, the payment of insurance proceeds to cover the “loss” is *49 obviously in Brooks’ and McGuigan’s self-interest. It takes them both off the hook.
On the other hand, we have not even a “shaky” corroboration of the alleged theft. See, Comm. v. Burgos, 36 Mass. App. Ct. 903-904 (1994). Indeed, the report we do have adds to rather than allays suspicion. In the quoted “hard copy” record, McGuigan says that “Stockbridge told [Brooks] not to report the vehicle as stolen to the police.” Pregnant in that assertion is that both Brooks and McGuigan knew that reporting the theft alleged to the police was otherwise required, as indeed it was.[5] Why, then, not report it? Could it be that to have done so falsely would have subjected the reporter to criminal prosecution? (G.L.c. 269, §13A makes it a crime intentionally and knowingly to make a false report of a crime to a police officer.)
In short, the only evidence in this case to establish a theft under the policy falls far short of the required standard of trustworthiness and it was error to rely on it.[6]
Defendant’s report allowed.
Finding to enter for defendant.

The policy provides: “If your auto is stolen, you must report the theft to us [i.e., insurer] and the police.”

Under the relevant provision of the insurance policy dealing with the rights of secured lenders, the policy states, “ [i]f you [the insured] do not file a proof of loss as provided in this policy, the secured lender must do so within 30 days after loss or damage becomes known to the insured lender.”

Defendant contended that (1) no proper foundation had been laid to admit the record; (2) it was not a business record under the statute; and (3) plaintiff’s lone witness, John Gavin, was not the plaintiff’s “keeper of the records” for the purpose of allowing the “hard copy” into evidence. At oral argument defendant waived this last claim. Because we allow this report on the basis that the proffered evidence is not admissible under G.L.c. 233, §78, we need not address appellant’s remaining arguments.

See footnote 1 and accompanying text, supra, p. 2.

Given Brooks’ and McGuigan’s cited incentive to fabricate, it might also be said that the noted business record requirement of “good faith” could not, as matter of law, be satisfied here. Cf., Hartford Accident and Indemnity Company v. Millis Roofing and Sheet Metal, Inc., 11 Mass. App. Ct. 998, 998 (1981). (“Want of good faith... carries an implication of a dishonest purpose, conscious doing of wrong, or breach of duty through motive of self-interest... ”)