## Beal Bank, SSB *vs.* Richard R. Eurich.

Middlesex. May 3, 2005. - August 3, 2005.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Evidence,* Business record. *Bank.*

In a collection action to recover a deficiency on a mortgage note after a foreclosure sale, the judge properly admitted in evidence under the business records exception to the hearsay rule, G. L. c. 233, § 78, computer printouts generated by a company that serviced loans for the plaintiff bank, where all the requirements for the admission of such evidence, including that the records were made in the regular course of business, were met, and where the bank laid a proper foundation and provided sufficient evidence of the opening balance on the loan. [815-820]

Civil action commenced in the Superior Court Department on February 20, 1998.

The case was heard by *Margot Botsford,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Christopher P. Litterio (Brian K. French* with him) for the plaintiff.

*Mark W. Corner* for the defendant.

Ireland, J. Beal Bank, SSB (bank), brought an action against Richard R. Eurich (defendant) to recover a deficiency on a mortgage note after a foreclosure sale. After a jury-waived trial, the trial judge entered judgment for the bank and ordered the defendant to pay the deficiency and attorney's fees. The defendant appealed from the judge's decision, and in an unpublished memorandum and order pursuant to its rule 1:28, the Appeals Court reversed the judgment, holding it was error to allow in evidence two computer printouts showing the amount owed on the debt. *Beal Bank, SSB* v. *Eurich,* 62 Mass. App. Ct. 1101 (2004). We granted the bank's application for further appellate review to consider only whether computer printouts

generated by a company that services loans for the bank were properly admitted as the bank's records under the business records exception to the hearsay rule. Because we conclude that the computer printouts were properly admitted as the bank's business records, we affirm the judgment of the Superior Court.

*Facts.* We recite the relevant facts as found by the judge, supplementing them as necessary, and reserving certain details for our discussion.

On July 29, 1987, the defendant executed and delivered a five-year promissory note in the amount of $151,000 to Home Owners Federal Savings and Loan Association (Home Owners). The note was secured by a first mortgage on four condominium units located in Springfield. On June 1, 1992, the Resolution Trust Corporation (RTC), receiver of Home Owners, assigned the note and mortgage to Bankers Trust Company of California, N.A. (Bankers Trust), as trustee under a "Pooling and Servicing Agreement Dated as of June 1, 1992, for RTC Home Equity Loan Mortgage Pass-Through Certificates Series 1992-HEL 1." On September 18, 1996, Bankers assigned the note to the bank. At the time of the assignment to the bank, the full principal of the note remained outstanding, and no interest payments had been made after August, 1992.

The bank employed Electronic Payment Systems (EPS), a company that services approximately 4,000 loans for the bank, to service the defendant's loan. In November, 1996, while the bank held the loan, EPS recorded that the defendant made one interest payment in the amount of $733.63. No further payments were made.

On June 23, 1997, the bank sent the defendant a notice of intent to foreclose and notice of acceleration of the note. The bank was the only bidder at the foreclosure sale on September 26, 1997, and paid $18,000 for the four condominium units. The bank then brought this action to recover the deficiency.

At the jury-waived trial, the bank introduced two computer printouts (captioned "Master Query Screen" and "Loan Payoff Calculation") created by EPS to prove the amount of the deficiency. Both printouts were dated September 12, 1997. Over the defendant's objection, the judge admitted both documents as business records of the bank, finding that as the bank's servic-

ing agent, EPS had an obligation to report accurately and therefore it was fair to consider the printouts as the bank's business records.

*Discussion.* The defendant argues that the judge erred in allowing the computer printouts in evidence under the business records exception to the hearsay rule.[1] G. L. c. 233, § 78. We conclude the judge did not abuse her discretion in admitting this evidence. See *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978).

Under the business records exception to the hearsay rule, a document is admissible as a business record if the judge finds that it was (1) made in good faith; (2) made in the regular course of business; (3) made before the action began; and (4) the regular course of business to make the record at or about the time of the transaction or occurrences recorded. *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 105 (1983). A judge's decision to admit the records implies these requisite findings under G. L. c. 233, § 78. *Commonwealth* v. *Baker*, 368 Mass. 58, 84 (1975).

The statute states that a record made in the regular course of business "shall not be inadmissible . . . because it is hearsay." G. L. c. 233, § 78. Rather, "[s]uch a record is presumed to be reliable and therefore admissible because entries in these records are routinely made by those charged with the responsibility of making accurate entries and are relied on in the course of doing business" (citations omitted). *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 406 (1982). Furthermore, the "statute

---

[1]General Laws c. 233, § 78, provides in relevant part:

"An entry in an account kept in a book or by a card system or by any other system of keeping accounts, or a writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter."

makes clear that the record is admissible even when the preparer has relied on the statement of others, by providing that 'personal knowledge by the entrant or maker' is a matter affecting the weight (rather than the admissibility) of the record." *Id.*, and cases cited. Although the preparer's hearsay sources must carry the same indicia of reliability and be shown to have been reported as a matter of business duty or business routine, this can be accomplished by presenting evidence of normal business practice, rather than by producing each speaker. *Id.*

The two computer printouts at issue contained the defendant's November, 1996, payment and his balance information that EPS maintained on a computer system to which the bank had access at all times through their own computers. Although there is no question that the printouts were created before this action began — they were both dated September 12, 1997, and this action began on February 20, 1998 — the defendant argues that the requirements concerning whether the records were made in the regular course of business were not met.

The defendant first argues that the judge improperly admitted the computer printouts because they were the records of EPS and the bank failed to present testimony concerning the business practices of EPS in maintaining such records. Although the bank's loan default manager (manager) testified that EPS serviced the defendant's note on the bank's behalf pursuant to a contract, the defendant argues that this was insufficient to provide the necessary foundation. Specifically, the defendant points out that the manager was not the preparer of the documents, and did not testify about how the records were maintained or generated. Additionally, relying on *NationsBanc Mtge. Corp.* v. *Eisenhauer*, 49 Mass. App. Ct. 727, 734 (2000), the defendant argues that because the printouts were created by EPS and merely received by the bank, they lack the indicia of reliability and are inadmissible as business records of the bank.

In *NationsBanc Mtge. Corp.* v. *Eisenhauer, supra,* the assignee of a mortgage sought to establish that the mortgage had been discharged in error. At trial, the assignee attempted to introduce two types of documents — those that were received from its predecessor, and those that it prepared based on documents from its predecessor. The Appeals Court held that docu-

ments received from another business lacked the indicia of reliability and were properly excluded. It further held that documents based on information provided by another business were properly excluded where the assignee failed to offer any evidence that the person initially reporting the information had personal knowledge or a business duty to report the information accurately.

However, it is well established that G. L. c. 233, § 78, "should be interpreted liberally to permit the receipt of relevant evidence." *Wingate* v. *Emery Air Freight Corp.*, 11 Mass. App. Ct. 982, 983 (1981), *S.C.*, 385 Mass. 402 (1982). Accordingly, we conclude that a representative of EPS did not have to testify before the judge could admit the printouts as business records. See *Sawyer & Co.* v. *Southern Pac. Co.*, 354 Mass. 481, 483 (1968) (purchaser of cantaloupe allowed to introduce as business records United States Department of Agricultural certificates made by Federal inspectors in regular course of business). Moreover, this is not a case where the bank is simply receiving information from another business. Rather, EPS is the bank's servicing agent; it has a business duty accurately to report the information to the bank; and the bank routinely accesses and relies on that information. See *United States* v. *Moore*, 923 F.2d 910, 914-915 (1st Cir. 1991) (holding head of bank's consumer loan department qualified to introduce computer generated "loan histories" as business records where complied by service bureau connected by telephone lines to bank, and she and others at bank could and did retrieve information).

The testimony of the bank's manager provided sufficient evidence to support admitting the two computer printouts as business records. The bank's manager testified[2] that EPS serviced the note on the bank's behalf under a contract.[3] He further testified that EPS maintained computerized records of the information regarding the loan, to which the bank had direct

---

[2] We reject the defendant's contention that only the person responsible for entering the data into the computer may testify regarding the contents of the computer printouts. See *United States* v. *Moore*, 923 F.2d 910, 915 (1st Cir. 1991).

[3] The defendant argues that the judge could not consider this as the contract was not in evidence and the manager did not testify about the terms of the contract. We disagree. Although the actual terms of the contract were not in

on-line access, enabling it to retrieve and print loan information at any time. See *id.* See also *Wingate* v. *Emery Air Freight Corp., supra* at 406 (personal knowledge affects only weight of business records evidence). Clearly, EPS, as the bank's servicing agent, had a business duty accurately to maintain such records for the bank. Given EPS's obligation to maintain these records, and the bank's reliance on such records, the judge was warranted in finding that the two computer printouts were made in good faith and in the regular course of business. Moreover, as the bank could access these reports daily, in order to determine whether there was any new activity on the loan, the trial judge was warranted in finding that it was the usual course of business to make such records at or about the time of the events recorded.

The defendant also argues that, even assuming the bank offered sufficient evidence of EPS's business practices, the printouts still were inadmissible because the bank failed to establish the loan balance at the time it was acquired from its predecessors, where the bank offered no evidence of how the figures in the printouts were derived. While conceding that the business records of one business are admissible as the business records of another business where such records are integrated into the latter business's records and relied on, see, e.g., *Air Land Forwarders, Inc.* v. *United States*, 172 F.3d 1338, 1342-1343 (Fed. Cir. 1999), the defendant argues that the admissibility of such records is premised on a proper foundation, which he claims was lacking in this case. The defendant further concedes that if the bank had offered properly admissible evidence of the amount of the opening balance on the loan such evidence may have been sufficient to permit it to carry forward the servicing of the loan. However, the defendant argues that the bank failed to present any evidence of the opening balance of the loan when it was acquired by the bank through its predecessors' records or otherwise. We disagree.

We recognize that "[t]he problem of proving a debt that has been assigned several times is of great importance to mortgage

evidence, there was evidence of the existence of a contract between EPS and the bank to service the loan.

lenders and financial institutions." *New England Sav. Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 607 (1998). Given the common practice of banks buying and selling loans, we conclude that it is normal business practice to maintain accurate business records regarding such loans and to provide them to those acquiring the loan. See *Wingate* v. *Emery Air Freight Corp.*, *supra* at 406. See also *United States* v. *Samaniego*, 187 F.3d 1222, 1224 n.1 (10th Cir. 1999) (including bank records in "class of records commonly viewed as particularly trustworthy"); *Federal Deposit Ins. Corp.* v. *Staudinger*, 797 F.2d 908, 910 (10th Cir. 1986), quoting Weinstein's Evidence at 803-178 (1985) ("foundation for admissibility may at times be predicated on judicial notice of the nature of the business and the nature of the records . . . particularly in the case of bank and similar statements"). Therefore, the bank need not provide testimony from a witness with personal knowledge regarding the maintenance of the predecessors' business records. The bank's reliance on this type of record keeping by others renders the records the equivalent of the bank's own records. To hold otherwise would severely impair the ability of assignees of debt to collect the debt due because the assignee's business records of the debt are necessarily premised on the payment records of its predecessors.[4]

In the circumstances of this case, we conclude that the bank laid a proper foundation and provided sufficient evidence of the opening balance of the loan when it was acquired by the bank through the testimony of its manager. The manager testified that the bank received a spread sheet from its predecessor showing the balance owed at the time the bank acquired the loan. This testimony is supported by the computer printout captioned "Loan Payoff Calculation," which states that it is a "Conver-

---

[4]As a matter of fairness, we also note that, in this type of collection action, the defendant debtor would ordinarily have records of any payments made, and thus would readily be able to demonstrate any error in prior credits or calculations. Here the defendant did not introduce any evidence that he had made any additional payments or provide any alternative calculation of the amount still owed. Moreover, the defendant has never denied that he owes the full amount of the debt; he merely stated in his answer to the complaint that he was without knowledge or sufficient information.

sion of Beal Bank Assets from Merrill Lynch"[5] with a date of October 4, 1996. Therefore, the bank provided sufficient evidence of the opening balance.

*Conclusion.* For the reasons stated above, we conclude that the judge did not abuse her discretion in admitting the computer printouts as business records of the bank.

*Judgment affirmed.*

[5]Merrill Lynch Credit Corporation was the attorney-in-fact for Bankers Trust.