Coven, J.
This is an action in contract and tort to recover for the defendant-landlord’s breach of contract, misrepresentation and G.L.c. 93A unfair and deceptive practices in leasing commercial premises to the plaintiff-tenant.
The evidence summarized in both the report and trial judge’s findings, see Olofson v. Kilgallon, 362 Mass. 803, 805 (1973), indicates that plaintiff Anna M. Montello was an inexperienced business woman interested in opening a small restaurant. She responded to a newspaper advertisement for retail space which had been placed by defendant Donald Smith, who owned afour and one-half acre tract of land in the Town of Amesbury on which he operated a garden center and landscaping business.
*245 At the parties’ first meeting in August, 1986, the defendant indicated that he was in the process of completing the first phase of a twenty to forty unit mall to be called “Chain Bridge Shopper’s Village Mall” which he expected to complete by December, 1987. The defendant implied that he had obtained all permits necessary to complete the entire mall project. He represented that a rock ledge which obstructed public view of the mall would be removed before winter, and that the parking area would be repaved when construction began in the fall. The defendant advised the plaintiff that the six unit section constituting phase one, which was then under construction, would be completed by the end of the summer, and that three of the six units were available for rent.
On September 2,1986, the defendant informed the plaintiff that two of the three available units in phase one had been rented, and that several persons had expressed interest in the third unit being considered by the plaintiff.
The defendant further described his commercial project as the “flagship of all malls to be developed in the area, and assured the plaintiff that she could anticipate a substantial and continuing annual growth in a restaurant business in such mall. The defendant produced an architect’s comprehensive drawing of the completed mall which showed twenty-eight stores, extensive landscaping, lights, expanded parking areas, roads, and waiting areas and facilities to accommodate public transportation. Finally, the defendant informed the plaintiff that she would hold the exclusive food service rights in the entire new mall.
Approximately one month later, the parties executed a five year lease at a monthly rental of $988.50which granted the plaintiff the exclusive right to operate a restaurant in the mall.
The trial court made extensive findings of fact indicating that the plaintiff was fraudulently induced to lease the premises by the defendant’s knowingly false representations and promises that her lease was for exclusive restaurant rights in the entire new “Chain Bridge Shopper’s Village Mall.” Despite express and implied assurances that he was ready to begin the mall and to complete work by December, 1987, the defendant had in fact neither the ability nor the intent to undertake the mall project and had actually abandoned all plans for such commercial development long before his first meeting with the plaintiff. The defendant never secured or even applied for permits necessary to complete his “flagship mall,” and had obtained only a single six month permit to start work on the six units constituting “phase one.”
Moreover, the defendant had earlier informed the Amesbury Building Inspector that he was unable to complete even the first phase of the project, and that no more work would be done or permits sought. The court found that the two units the defendant identified as already leased had never been rented, and actually consisted of only falsely painted fronts behind which lay skeletal interiors. The purported “completion” work on these two units in fact ceased immediately after the plaintiff executed her lease. The only units ever rented or occupied on the defendant’s property were the unit leased to the plaintiff and the unit utilized by the defendant for his landscaping business.
The court also found that despite the defendant’s promises and the terms of the parties’ written lease, the defendant never removed the obstructing ledge, provided new roads, or repaved the parking lot and the road adjacent to the plaintiff’s unit.
The defendant closed her business and terminated the lease on December 27, 1987. The trial court determined that the plaintiff’s losses at the time of lease termination consisted of $39,500.00 in loans obtained to start the business of which the defendant was aware prior to lease execution, $19,800.00 in interest payments, $14,900.00 for unpaid obligations for services and $19,338.82 in net operating losses, less the proceeds of thepublic auction sale of the restaurant’s equipment. The courtfound that the plaintiff s actual damages totaled $91,338.00, and awarded treble damages pursuant to G.L.c. 93A § 11. Judgmentwas entered for the plaintiff in the amount of $274,114.00, plus $50,000.00 in attorney’s fees and $675.72 in costs.
*246 The defendant now claims to be aggrieved by the trial courf s denial of eight of his requests for rulings of law, and of his Dist./Mun. Cts. R Civ. P., Rule 59 motion for a new trial.
1. The defendant’s contention on his requests for rulings of law numbers 1,2,5 and 6 is that any statements made by him were not actionable misrepresentations, but were instead merely expressions of opinion of conditions to exist in the future, or of matters promissory in nature, too indefinite and imprecise to engender liability in tort. See generally, Saxon Theatre Corp. of Boston v. Sage, 347 Mass. 662 (1964); Moran v. Levin, 318 Mass. 770 (1946); Warren H. Bennett, Inc. v. Charlestown Sav. Bank, 3 Mass. App. Ct. 753 (1975). There was no error, however, in the denial of these requests which were inconsistent with the trial court’s proper findings of fact. See DiGesse v. Columbia Pontiac Co., 369 Mass. 99 (1975).
Whether a declaration constitutes an actionable misrepresentation is a question of fact, Coe v. Ware, 271 Mass. 570, 573 (1930), dependent upon the nature of the representation and the language used, the subject matter, the roles and relationships of the parties, the opportunity for investigation and reliance and all attendant circumstances. John A Frye Shoe Co. v. Williams, 312 Mass. 656, 663-665 (1942). In the instant case, there was ample evidence to support the courf s finding that the defendant made false, specific statements of his present intent and plans to construct the mall which were designed to induce the plaintiff to enter into a long-term commercial lease. As such statements misrepresented the actual intent of the defendant and were relied upon by the plaintiff to her financial detriment, they constituted actionable fraud. McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 709 (1990); Barrett Assoc., Inc. v. Aronson, 346 Mass. 150, 152 (1964); RESTATEMENT (SECOND) OFTORTS §530 (1977).
2. The defendant’s oral misrepresentations were actionable even though not included in the final terms of the written lease executed by the parties. McEvoy Travel Bureau v. Norton Co., supra at 711-712. Defendant’s contrary requests for rulings numbers 7,8,9 and 10 based on the parol evidence rule were properly denied, as such rule is applicable only in the absence of fraud or mistake. See generally, Massachusetts Elec. Co. v. Pacific Nat’l Inv. Corp., 9 Mass. App. Ct. 752, 755 (1980). Because the defendant’s fraudulent misrepresentations induced the plaintiff to sign the lease, the plaintiff was not limited to claims for breach of the written agreement. McEvoy Travel Bureau, Inc., supra at 711. “In obedience to the demands of a larger public policy, the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it.” Bates v. Southgate, 308 Mass. 170, 182 (1941).
3. There was also no abuse of discretion in the trial court’s denial of defendant’s Rule 59 motion for a new trial, Menard v. McCarthy, 410 Mass. 125, 129 (1991), brought on the grounds of excessive damages and findings inconsistent with the evidence.
The trial court’s subsidiary and ultimate findings of fact reflect a reasonable view of the evidence in this matter and were thus not “clearly erroneous”. First Penn. Mortg. Tr. v. Dorchester Sav. Bk., 395 Mass. 614, 621-622 (1985); Capital Bk. & Tr. Co. v. Richman, 19 Mass. App. Ct. 515, 519 (1985). Evidence that the defendant knowingly and willfully misrepresented material facts to induce the inexperienced plaintiff to execute a five year commercial lease warranted not only a finding of the defendant’s fraud, but also a determination that the defendant’s conduct attained that “level of rascality” and unfair commercial dealing proscribed by G.L.c. 93A. Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979). See also Picciuto v. Dwyer, 32 Mass. App. Ct. 137, 140 (1992). Common law fraud may constitute the basis for a claim of unfair and deceptive practices under G.L.c. 93A, § 11, and intentional fraud permits the imposition of statutory punitive damages. McEvoy Travel Bureau, Inc. v. Norton Co., supra at 714.
There was no error in the court’s computation and award of G.L.c. 93A multiple *247 damages herein.[2] The “actual damages” which may be recovered under G.L.c. 93A §11 are those “losses flowing directly from a wrongful act,” G.L.c. 93A,” are those Simon v. Solomon, 385 Mass. 91, 112 (1982), which include all out-of-pocket and consequential losses suffered as a direct result of the unfair and deceptive conduct at issue. Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982); Anzalone v. Strand, 14 Mass. App. Ct. 45, 47 et. seq. (1982). The plaintiff was entitled to be compensated for those pecuniary losses suffered in starting and operating her businesswhich were the direct and foreseeable consequence of the defendant’s fraud. The callous, knowing and willful nature of the defendant’s G.L.c. 93A violation permitted the court to treble the damages assessed against the defendant. Heller v. Silver Branch Construc. Corp., 376 Mass. 621, 627 (1978). There is no merit to the defendant’s contention that the total damages should have been reduced by the amount of rent for the balance of the term after the plaintiff vacated the premises, as the lease requiring such rent was vitiated by the defendanf s fraudulent misrepresentations. Golding v. 108 Longwood Avenue, 325 Mass. 465 (1950).
Finally, the defendant has failed to establish that the trial judge abused his discretion, Linthicum v. Archambault, 379 Mass. 381, 388 (1979) by awarding G.L.c. 93A §H attorney’s fees in an amount exceeding ‘fair and reasonable compensation for services rendered”, First Nat'l Bank of Boston v. Brink, 372 Mass. 257, 264 (1977), by plaintiff’s counsel. Contrary to the defendant’s contention, no evidentiary hearing for the assessment of such fees was necessary, particularly in view of the court’s opportunity to weigh the relevant factors over the course of the lengthy trial of this matter. Heller v. Silver Branch Construc. Corp., supra at 629-631. We note that in assessing attorney’s fees, the trial court had before it the affidavit of plaintiff s counsel detailing time and charges.
There being no error, the trial court’s judgment for the plaintiff is affirmed. Report dismissed.

 The defendant forfeited any right to appellate review of legal issues attending the court’s assessment of damages herein by failing to file an appropriate request for ruling of law on the measure of G.L.c. 93A, §11 damages. See generally, Arrow Paper Corp. v. Boylston Foods, Inc., 1 Mass. App. Ct. 808, 809 (1973). The scope of our analysis is, therefore, restricted to the courts exercise of its Rule 59 discretion. As in the instant case, there is generally no abuse of discretion in a trial courts refusal to consider an issue raised for the first time on a motion for a new trial. Cassamasse v. J. G. Lamatte & Son, Inc., 391 Mass. 315, 320 (1984)