Greco, J.
In December of 1988, plaintiff Anna A. Montello (“Montello”) sued defendant Donald Smith (“Smith”) for breach of contract, misrepresentation and G.L.C. 93A unfair and deceptive practices arising from her lease of a unit in a shopping mall which Smith was purportedly then constructing. Following a trial in the Newburyport District Court before a judge now retired, the action was appealed to this Appellate Division, further appealed to the Appeals Court, remanded for an assessment of damages hearing in the trial court, and now appealed again to this Division.
Evidence relevant to the liability phase of this case was recited in detail in Montello v. Smith, 1992 Mass. App. Div. 244. To provide some context for the damages issues raised on this appeal, we briefly summarize such evidence. Montello was interested in opening a small restaurant specializing in pizza and submarine sandwiches, and responded to Smith’s advertisements for available retail space. Smith informed her that he was in the first phase of completing a shopping mall which would become the “flagship of all malls to be developed in the area.” As a result of their discussions, Montello signed a five year lease which granted her the exclusive right to operate a restaurant in the mall. As we indicated on the prior appeal:
The trial court made extensive findings of fact indicating that [Mon-tello] was fraudulently induced to lease the premises by [Smith’s] knowingly false representations and promises that her lease was for exclusive restaurant rights in the entire new ‘Chain Bridge Shopper’s Village Mall.’ Despite express and implied assurances that he was ready to begin the mall and to complete the work by December, 1987, [Smith] had in fact neither the ability, nor the intent, to undertake the mall project and had actually abandoned all plans for such commercial development long before his first meeting with [Montello], [Smith] never secured or even applied for permits necessary to complete his ‘flagship mall,’ and had obtained only a single six month permit to start work on the six units constituting ‘phase one.’
Id. at 245. There were various other misrepresentations and broken promises. Predictably, the restaurant failed under such circumstances, and Montello closed its doors and terminated the lease in December, 1987.
After the original trial, the court entered a finding for Montello, and assessed actual damages in the amount of $91,338.00, which the court trebled, $50,000.00 in attorney’s fees, and $675.72 in costs, for a total of $324,689.72. On *44 appeal, this Division found no error, affirmed the trial court’s judgment and dismissed the appeal.
On further appeal, the Appeals Court left undisturbed the finding for Mon-tello as to liability, including the trial court’s finding in her favor on her G.L.c. 93A claim, but vacated the judgment and remanded the case to the trial court “for reconsideration of damages and attorney’s fees.” Specifically, the Appeals Court expressed concern about possible duplicative amounts for interest and “expenses for services incurred but not yet paid” which may have also been included in damages awarded for the “net loss for 1987.” Second, the Court noted that the damages included an amount for loans without any findings that the “loan proceeds [were] losses chargeable to the business.” Finally, the Appeals Court found the $50,000.00 attorney’s fee award to be excessive, and directed that “[attorney’s fees ... be recomputed to reflect the reasonable value of the services rendered, augmented to include services rendered on remand. The Court clearly contemplated that actual damages on remand would still be trebled. Montello v. Smith, 39 Mass. App. Ct. 1120 (1995).
On remand, damages were apparently assessed after hearing under the “benefit of the bargain” rule by which a plaintiff is awarded “the difference between the value of what he [had] received and the actual value of what he would have received if the representations had been true.” Rice v. Price, 340 Mass. 502, 507 (1960). As indicated in his written findings and rulings, the assessment judge deemed the value of what Montello in fact received to be the proceeds received from the sale at auction of the business property and leasehold improvements after the restaurant closed (i.e., $1,200.00). The value of Montello’s business “as it would have been” was pegged at “the value of [her] investment in money and the value of labor, with credit for the receipts of the business while it was open,” which was considered “the same as her expenditures in labor and money caused by [Smith’s] representations.”
In assessing single damages in the amount of $76,142.11, the judge included in Montello’s expenditures the money spent by her for leasehold improvements and business equipment; the loss shown on Montello’s income tax return for the year she operated the restaurant, less any amounts for interest payments and depreciation; and the value of the time spent by Montello and members of her household working at the restaurant for which they were not actually paid. The single damages excluded any bank or private loans taken out by the plaintiff. Consistent with the directive of the Appeals Court, the single damages were then trebled, for a total of $228,426.33.
As to attorney’s fees, the assessment judge whittled the $50,000.00 originally awarded for services rendered through the time of trial down to $21,375.00, an amount the defendant has not contested on this appeal. The assessment judge also awarded, however, an additional $7,087.50 for preparation and retrial of the damages portion of the case.
The defendant now argues on this appeal that the judge erred in admitting into evidence certain cancelled checks of the plaintiff’s business which were offered to show the amounts spent for equipment and leasehold improvements, and in admitting the plaintiff’s tax return as evidence of her business losses. Smith further contends that the damages, particularly amounts for unpaid labor, and additional attorney’s fees were unreasonable.
1. To establish her expenditures for business equipment and leasehold improvements, Montello was allowed, over objection, to introduce into evidence cancelled checks drawn on the restaurant's account at the Northeast National Bank. Montello testified that the checks were made out by her or at *45 her direction; that the checking account was maintained in good faith; that the checks were made out at or about the time reflected on them; and that it was the regular course of the restaurant’s business to maintain the checks. Further examination revealed that Montello signed all the checks as maker; that in some instances, she filled in the name of the payee; that, on other occasions, she gave the signed check, with no designation of payee or amount, to Mario Pinierio who was described as her “life partner” and who was intimately involved in the restaurant venture with her; that Pinierio would subsequently fill in the name of the payee when he purchased equipment at an auction or at some business; that on still other occasions, Montello made checks payable to Pinierio, who cashed them and used the proceeds to buy equipment for the restaurant. In two instances, Montello made checks out to herself, cashed them, and used the proceeds for business purposes.
The cancelled checks were properly admitted pursuant to G.L.c. 233, §78. The statute expressly allows into evidence
[a]n entry in an account kept in a book or by a card system or by any other system of keeping accounts, or a writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event.
The assessment judge could have properly determined that the checking account of a small business like the restaurant in question was a “system of keeping accounts,” Quinn Bros., Inc. v. Weaker, 414 Mass. 815, 818 (1993), and that the checks served as both a method of payment and, after cancellation, as a record of the transactions involved. That Montello may have lacked personal knowledge of what transpired at the auctions or at other times when equipment was purchased would only affect the weight to be accorded to this evidence, not its admissibility. See G.L.c. 233, §78. Nor is there any particular problem, contrary to Smith’s contention, with the checks made out to Montello and Pinierio and the blank checks on which Pinierio filled in the names of the payees. Section 78 “makes admissible a business record which results from reports, passing through any number of people, so long as each person had a duty to report, and the information originally came from an employee with personal knowledge who also had a duty to report.” Wingate v. Emery Air Freight Corp., 385 Mass. 402, 407 (1982). There was testimony that Pinierio’s duties included the purchasing of equipment, and the assessment judge could have properly inferred that he had a “business interest to report accurately” how the money was expended. Id. In effect, both Montello and Pinierio became the preparers of the record. Montello testified that this is how they did business and it was not necessary that Pinierio also testify. Id. at 406. How any of this money was actually spent was a question of credibility which the defendant was able to explore at the assessment hearing.
2. No issue is properly presented on this appeal as to the admissibility of Schedule C of the plaintiff’s tax return to show the restaurant’s losses. The tax return was admitted into evidence at the original trial. Because the defendant never challenged that ruling on the first appeal to this Division, as defense counsel has conceded, the judge properly refused to entertain the defendant’s objection at the assessment hearing. Blake v. Springfield Street Rwy. Co., 9 Mass. App. Ct. 912, 913 (1980). Moreover, the admissibility of the tax return was not argued in the defendant’s brief and is, therefore, deemed waived. Dist./Mun. Cts. R. A. D. A., Rule 16(a) (4). See Wellfleet v. Glaze, 403 Mass. 79, 80 n. 2 (1988); Harrison v. Aldenberg, 1997 Mass. App. Div. 37, 39; Draper v. Kids “R” Us, 1996 Mass. App. Div. 27 n. 4.
*46 3. What appears to be the defendant’s prime concern on this appeal and what has undoubtedly driven all the proceedings in the long history of this case is the money; i.e., the amount of the damages and attorney’s fees awarded. Despite the significant reduction at the assessment hearing of the damages and fees awarded at the original trial, Smith argues that the amounts remain excessive.
In Massachusetts, damages for fraud and deceit have historically followed the “benefit of the bargain” rule whereby a plaintiff “is entitled to recover the difference between the value of what he has received and the actual value of what he would have received if the representations had been true.” Rice v. Price, supra at 507. See generally, Danca v. Taunton Sav. Bank, 385 Mass. 1, 8 (1982). However, where the misrepresentations have caused real damage, but the relevant values are not easily proved, a plaintiff is “entitled to all damages it had suffered as a proximate result of ... [the] misleading representations.” VMark Software, Inc. v. EMC Corp., 37 Mass. App. Ct. 610, 619 (1994). See also, GTE Products Corp. v. Broadway Elec. Supply Co., 42 Mass. App. Ct. 293, 296 (1997).
Despite his reference to the benefit of the bargain rule, the assessment judge awarded damages for Montello’s actual losses. The judge did have a figure to plug into the formula for the value of what in fact was received since he could have properly concluded that the business had no residual value other than the amount garnered from the sale of the equipment. There was no evidence, however, as to the value of an establishment of this type which was to be the only restaurant available to the public in the “flagship of all malls to be developed in the area.”
In calculating single damages in the amount of $76,142.11, the assessment judge properly excluded various amounts involving the “double counting” which the Appeals Court found problematic; namely, loan proceeds, interest payments and the tax deduction for depreciation. With one exception, all of the remaining items clearly fall into the category of out of pocket expenses incurred in connection with the failed enterprise. The exception is the value of the labor of Montello’s household members who were not paid for their services. At the assessment hearing, the court awarded $46,080.00 for these unpaid services, concluding that the value of such donated labor “belongs to the plaintiff and not the defendant, and should be included in the calculation of the business’ losses and the plaintiff’s damages.” However, the Supreme Judicial Court has declined to follow that line of cases which holds “that while such gratuitous service is a gift for the plaintiff’s benefit, it is one of the elements of his injury and that he is entitled to the benefit of the gift.” Daniels v. Celeste, 303 Mass. 148, 150 (1939). The Court has instead ruled that “recovery may be had only if the plaintiff has paid for such service, or has incurred a liability to pay therefor, or, in the case of necessary future services, will incur such a liability.” Id. In Daniels, the court concluded that because a husband could not make a valid contract with his wife, he “was under no obligation to recompense ... [her] for services as a nurse.” Id. at 151.
While this case does not involve a spousal relationship, and adult children have been held responsible for payment of the reasonable value of a parent’s services, see Copithorne v. Hardy, 173 Mass. 400 (1899), the absence of any evidence that Montello had any obligation to pay for the donated services renders this case analogous to Daniels. The time for Montello’s household members to bring a contract action for payment long ago expired, as did the time for Mon-tello to be charged with the crime of failing to pay wages. See Commonwealth v. Northern Telecom, Inc., 25 Mass. App. Ct. 255, 257 (1988); G.L.c. 149, §149. A *47 private complaint under G.L.c. 149, §150 would have had to have been brought within three years. More importantly, there is absolutely no evidence that the plaintiff has ever agreed to pay the household members in question, that she intends to pay them, or that she feels any obligation, legal or moral, to do so. Damages for this unpaid labor thus results in a windfall to the plaintiff. Compare VMark Software, Inc. v. EMC Corp., supra at 619-620 (plaintiff allowed to recover “the costs of the hours fruitlessly spent by [its] employees trying to make [a] defective computer system work” where the employees had received their regular salaries).
Accordingly, the $46,080.00 award for the value of the labor provided by Montello’s household members must be vacated.
While so ruling, we note that there was a $14,900.00 award at the original trial for expenses incurred, but not yet paid. It is unclear on the record before us what this amount represented. The assessment judge may have assumed that this item was identical to the unpaid labor he considered and thus concluded that it was subsumed within the larger amount he awarded. It may have, however, represented something entirely different or, even if it covered unpaid labor by parties other than Montello’s household members, may have been based on evidence heard by the original trial judge which warranted a finding that some legal obligation existed to pay the smaller $14,900.00 amount. This portion of the original damages does not appear to have been challenged on Smith’s first appeal to this Division. Moreover, the only concern of the Appeals Court was the possibility that the amount involved double counting. This concern is somewhat dispelled by an examination of Schedule C of the plaintiff’s tax return which is part of the record before us and which shows no entry for wages or any other item which may have included this amount. Accordingly, there may be no reason to now disturb this aspect of the original damages award. On this limited issue, the case is returned for further proceedings before the assessment judge to determine whether the $14,900.00 award, or some part of it, should be reinstated and added to that portion of the judge’s assessment in which we have found no error; namely, the $30,062.11 amount. In this regard, we note the directive of the Appeals Court that “[i]n his ... discretion, the judge may base the recomputation of single damages on the evidence in the [original trial] transcript and exhibits or may hear the evidence on damages afresh.” The total of any award must, of course, be trebled.
4. An additional $7,087.50 was awarded for reasonable and necessary attorney’s fees incurred in relation to the assessment hearing. This amount appears to constitute payment for forty-seven hours at the rate of $150.00 per hour (the same rate charged for legal services at the original trial). An award of attorney’s fees rests within the discretion of the trial judge, and will be reversed on appeal “only if it is clearly erroneous.” Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 363 (1997). The assessment judge herein properly considered the factors set out in Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979). While the time spent by counsel on this fairly short hearing was just about half that spent for all services rendered up to and through the original trial, the judge may well have properly considered the extra time needed by counsel to review all of the prior proceedings and evidence and to reorient himself in a case that had been, but for the various appellate proceedings, dormant for five years.
Accordingly, the total award of $28,462.50 for attorney’s fees is affirmed. As Smith has raised no issue as to the validity of the $675.72 award of costs, said award is also affirmed.
The assessment of damages is hereby vacated, and this case is returned to *48 the assessment judge for the limited further proceedings ordered above. Final judgment consistent with this opinion and the further proceedings to be held in the trial court is then to be entered in favor of plaintiff Anna A. Montello.
So ordered.