Barrett, J.
GreatAmerica Leasing Corporation (“GreatAmerica”) brought this action for breach of an office equipment lease against both the lessee, the Law Office of Donald H. Jackson, Jr., P.C. (“law office”), and the guarantor of the lease, defendant Donald H. Jackson, Jr. (“Jackson”). The law firm was defaulted. Jackson’s liability was determined by summary judgment. After a subsequent hearing for the assessment of damages, the trial court entered judgment against both defendants, jointly and severally, for $13,716.98, plus costs and $22,000.00 in attorney’s fees. Jackson filed this Dist./Mun. Cts. R. A. D. A., Rule 8B, appeal on a charge of error in the court’s evidentiary rulings during the assessment hearing, and the amount of its award of attorney’s fees to GreatAmerica.
There was no error.
It was largely undisputed that on June 14, 2005, Jackson signed, both as a representative of the law office and as guarantor, an agreement with RISO Products of Boston (“RISO”) for a 60-month lease of a Minolta copier machine. That lease was later assigned by RISO to GreatAmerica. In April, 2006, only ten months into the five-year lease, the law office stopped malting the required monthly payments. The copier was subsequently removed from the law office at Jackson’s request. GreatAmerica later accepted an offer from RPB Systems and Services, Inc. (“RPB”) to purchase the copier for $1,100.00. GreatAmerica then commenced this suit to recover the unpaid lease balance, plus interest, costs and attorney’s fees as provided for in the lease.
Jackson effectively admitted his liability in his answer, and GreatAmerica moved for summary judgment. On the day before the scheduled summary judgment hearing and long after discovery had closed, Jackson served GreatAmerica with a Mass. R. Civ. R, Rule 30(b)(6) notice of deposition of RPB, which, Jackson claimed, was necessary to explore the issue of GreatAmerica’s mitigation of its damages. The trial court suspended the summary judgment hearing, and the deposition went forward. GreatAmerica then refiled its summary judgment motion, which the trial court *166 allowed on the issue of Jackson’s liability.
No witnesses were called at the assessment of damages hearing. Instead, GreatAmerica introduced, over Jackson’s objection, affidavits by three of its employees and portions of the RPB deposition. As to attorney’s fees, GreatAmerica submitted an affidavit of time and charges by one of its attorneys. Although Jackson had served nine separate subpoenas designating documents to be produced and compelling the appearance at the assessment hearing of nine attorneys from the law firm representing GreatAmerica[2] and had delayed the original summary judgment hearing by demanding to depose RPB, Jackson offered no evidence and called no witnesses at the assessment hearing.
1. Jackson’s initial argument on this appeal is that the trial court erred in denying his motion to strike the affidavits submitted by GreatAmerica at the assessment hearing. Jackson’s argument is based on Moran v. School Comm. of Littleton, 317 Mass. 591 (1945), in which it was stated that “[ajffidavits are not competent evidence to prove the truth of the statements that they contain upon a trial on the merits in courts of law unless they come within some established exception to the hearsay rule or come within some statutory provision.” Id. at 595.
Jackson’s reliance on Moran is, however, misplaced. In this case, the trial court entered summary judgment against Jackson on liability only. ‘The then-posture of the case [was] similar to ... an assessment of damages after a default.” J.W. SMITH & H.B. ZOBEL, RULES PRACTICE §56.9, at 300 (2007). Such an evidentiary hearing “is not a trial.” Reporters’ Notes to Mass. R. Civ. P., Rule 55. Rather, Rule 55(b) (4), which applies to the entry of default judgments in the District Court, provides in relevant part that “[i]f, in order to enable the court to enter judgment..., it is necessary... to determine the amount of damages..., the court may conduct such hearings or order such references as it deems necessary and proper. ...”[3]
GreatAmerica submitted three affidavits at the assessment hearing in support of its claim for damages. In the first, Bill Kilburg (“Kilburg”), a litigation specialist with GreatAmerica, averred based on his personal knowledge that on August 1,2006, he received a telephone call from Jackson demanding that the copier be picked up immediately; that he then instructed RPB, the dealer of the copier, to remove the equipment from the law office; that he later accepted an offer from RPB to purchase the copier for $1,100.00; and that, after deducting the amount received from the sale, Jackson owed GreatAmerica $12,911.44 as of January 25, 2007. Kilburg attached to his affidavit a signed copy of the lease agreement as well as the notice of RISO’s assignment of the lease that GreatAmerica had sent to the law office.
In the second affidavit, Steve Louvar (“Louvar”), another litigation specialist with GreatAmerica, averred that he had personal knowledge that, as of June 27, 2007, Jackson owed GreatAmerica $12,374.93 in damages. Louvar attached to his affidavit a breakdown of the figures he used in reaching his calculation. The third affidavit was submitted by Cherie Davis (“Davis”), an asset manager with GreatAmerica and *167 a specialist in equipment appraisal. Davis averred that, based on her appraisal of the copier in question, she estimated its fair market value at $1,050.00; and that “[t]he average sale of repossessed equipment of this type is 10-15% of the asset cost, which is standard across the leasing industry.”
These affidavits were competent evidence on the question of damages. The Kilburg affidavit, in particular, had already been submitted by GreatAmerica in support of its motion for summary judgment, at which time Jackson made no motion to strike. Nor does there appear to be any dispute about the authenticity of the lease attached to the Kilburg affidavit. According to the joint pretrial memorandum attached to the parties’ agreed statement, Jackson admitted in his answer that GreatAmerica had attached to its complaint as Exhibit A a “true and accurate copy of the lease agreement.” Jackson also concedes in his appellate brief that “ [t] his is presumably the same document identified as Exhibit A as attached to the... affidavit of Bill Kilburg.” The affidavits were based on the personal knowledge of each of the affiants. Further, the affidavits set forth arithmetical computations of damages based on the clear terms of the equipment lease and, thus, assisted the trial court in arriving at a dollar amount that the court could have itself readily calculated and verified.[4]
2. Jackson also argues that the trial court erred in denying his motion to strike the deposition of RPB. As that issue was not listed in his notice of appeal, Jackson has forfeited any right to appellate review of that issue pursuant to Dist./Mun. Cts. R. A. D. A., Rule 3(c), which provides that “[t]he notice of appeal shall limit the scope of appeal.” As both parties have briefed the issue, however, we exercise our discretion to address the issue.
Rule 32 of the Mass. R. Civ. P. governs the admissibility of depositions in court proceedings. Rule 32 (a) (3) provides that a deposition may be used in lieu of live testimony only upon a finding by the court that the deponent is unavailable. The court made no such finding in this case.
However, “ [i] t is for the excepting party to show that he has been prejudiced by the admission of the evidence.” Cormier v. Grant, 14 Mass. App. Ct. 965 (1982), quoting Freedman v. Lipman, 223 Mass. 471, 472 (1916). Jackson served GreatAmerica with a notice of deposition of RPB one day before the hearing on GreatAmerica’s summary judgment motion. At the hearing, Jackson argued that he needed to depose RPB because it was relevant to his claim that GreatAmerica had failed to mitigate its damages. The court assented and suspended the hearing.
At the deposition, both Jackson and GreatAmerica’s attorney posed questions. RPB’s director of operations testified that RPB had purchased the repossessed equipment from GreatAmerica for $1,100.00, but valued the equipment, by then in its own inventory, at $781.00. The deponent further explained that the sale of a used copier to an end user is difficult because of the surplus of available used copiers and the small market for used office equipment. He testified that assuming a sale to a *168 hypothetical end user, as opposed to a dealer, the price could reach “$1,500 to $2,000 depending on how much work had to go into retrofitting it.”
It is elementary that “a party cannot recover damages for loss that he could have avoided by [such] reasonable efforts ... as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise.” Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 612 (2007), quoting RESTATEMENT (SECOND) OF CONTRACTS §350(1) comment b (1981). But it was Jackson, as the party in breach, who bore the burden of demonstrating that GreatAmerica had failed to make reasonable efforts to mitigate its damages. Id. Having offered no evidence during the assessment hearing, Jackson failed to make such a showing. As a result, the judge’s admission of RPB’s deposition, which GreatAmerica offered to prove mitigation, was harmless, as the burden to prove mitigation had not yet shifted to GreatAmerica. See id.
3. Jackson’s final argument is that the attorney’s fees awarded to GreatAmerica were excessive. GreatAmerica’s attorney filed an affidavit in support of its client’s request for legal fees in the amount of $39,530.50. The court noted that “ [t] he defendant is responsible for the necessary time spent by the plaintiff in prosecuting this lawsuit,” but awarded legal fees to GreatAmerica in the reduced amount of $22,000.00.
“An award of attorney’s fees rests within the discretion of the trial judge, and will be reversed on appeal ‘only if it is clearly erroneous.’” Montello v. Smith, 1998 Mass. App. Div. 43, 47, quoting Cargill, Inc. v. Beaver Coal & Oil Co., 424 Mass. 356, 363 (1997). The standard of review is not substituted judgment. Bollen v. Camp Kingsmont, 2000 Mass. App. Div. 56, 57. Rather, “‘due deference’ is to be accorded a trial judge’s ‘firsthand knowledge of the services performed’ before him or her.” Id., quoting Homsi v. C.H. Babb Co., 10 Mass. App. Ct. 474, 482 (1980).
Contrary to Jackson’s contention, there is nothing in the record to suggest that the judge failed to apply properly the factors set forth in Linthicum v. Archambault, 379 Mass. 381, 388-389 (1979). Nor was this action, as Jackson contends, a simple collection case. Jackson was responsible for a number of additional procedural steps that complicated the dispute and needlessly protracted its resolution. As noted, GreatAmerica’s attorneys were forced to prepare for and attend a second summary judgment hearing after the first had been suspended to permit Jackson to depose RPB. GreatAmerica’s attorneys were also compelled to address the subpoenas Jackson served on nine different employees of the firm, whose names appeared on the billing records, ordering their appearance at the assessment hearing. After GreatAmerica negotiated the reduction of that number to two attorneys, Jackson failed to call either one as a witness at the assessment hearing. While an award of attorney’s fees in excess of the judgment amount is not preferred, the discrepancy in this case was largely a product of Jackson’s own intransigence.
Judgment affirmed.
So ordered.

 After subsequent negotiations by GreatAmerica, Jackson agreed that only two of the nine attorneys he had subpoenaed would be required to attend the hearing.

 The remainder of the rule provision pertaining to jury trials required by statute is inapplicable here.

 The lease, itself, was for a duration of 60 months at a rate of $0.047 a copy with a minimum volume of 5,000 copies per month. Paragraph 12 provided that, in the event of default, the lessor may collect the unpaid balance of the lease (discounted by 6%), interest at a rate of 8% per annum, and reasonable attorney’s fees and actual court costs. Clearly, the contract allows for the calculation of a sum certain.