McCallum, J.
The plaintiff commenced this suit to recover damages for renovation contracting services performed on the defendants’ home. The defendants counterclaimed for breach of contract, misrepresentation, and violation of G.L.c. 93A. Following a bench trial, the trial judge found in favor of the plaintiff on all claims, and awarded quantum meruit damages in the sum of $27,622.71. The defendants thereafter filed this Dist./Mun. Cts. R. A. D. A., Rule 8C appeal.
We summarize the facts as follows. In 2004, defendants William and Emily Maher (“Mahers”) contacted plaintiff Cape Painting and Carpentry Inc. (“Cape Painting”) to renovate and build an addition to their house in North Falmouth. After several discussions with Peter Kroll (“Kroll”), the president of Cape Painting, the Mahers decided to renovate the first floor, converting three bedrooms into a master suite and study, and to build a partial second-story addition, comprising two bedrooms, a study, and a bathroom. The Mahers secured an architect to draft plans, and they requested an estimate from Kroll.
The architect’s initial plan, while not included in the record, was a “floor plan sketch” or “progress print,” which provided floor dimensions but did not define specifications, such as windows and utilities. On December 12, 2004, after reviewing the architect’s preliminary plan, Kroll provided an estimate to the Mahers.[3]
*23 In January, 2005, the Mahers hired Cape Painting to perform the renovations to their home. There was no written contract. In late January, the Mahers left for Florida, and Cape Painting began the job. The parties kept in contact by telephone and e-mail. As the project progressed, the Mahers provided Cape Painting with certain specifications, requesting skylights, a vaulted ceiling, a change in the location of the master bedroom closet, hardwood floors in the first-floor living room, a formal staircase, an open railing system on the second-floor landing, a third second-story bedroom, and recessed lighting fixtures in the lower hallway and upper hallway study. The third second-story bedroom and recessed lighting fixture renovations were substantial, requiring Cape Painting to move walls and adjust the already finished framing, and to install the fixtures after the ceiling had already been plastered and painted. The parties also decided to expand the second-story framing to add double windows, and to support the second story itself with manufactured beams. Despite all these additions and modifications, neither party broached the subject of cost.
Cape Painting submitted periodic invoices to the Mahers that summarized its work and divided its charges by category: labor, materials, subcontractors, and miscellaneous. The bills were not itemized, however, failing to disclose not only what Cape Painting was paying its workers, but also its percentage markup. The markup comprised Cape Painting’s profit and overhead expenses. According to Kroll, the company’s overhead included insurance, rent, maintaining five trucks, and paying for his own labor.
The Mahers fell behind in their payments to Cape Painting. In a series of emails from May to August, 2005, Mr. Maher requested cost information from Cape Painting.[4] Kroll did not respond. On September 13, 2005, Mr. Maher sent a final e-mail to Kroll requesting a statement showing the total amount billed and paid, and a list of every subcontractor and supplier used showing the total amount of money billed and paid by Cape Painting to each subcontractor. Kroll responded days later that Cape Painting had completed the project, and that the information Mr. Maher was seeking had already been provided to him in past invoices and e-mails. Kroll further noted that the Mahers owed an outstanding balance of $33,759.35, that the Mahers would now be subject to a late fee, and that legal recourse would be taken should the bill not be paid. The Mahers made no further payments.
Cape Painting brought suit against the Mahers and sought damages totaling $33,759.35. The Mahers responded with counterclaims against both Cape Painting and Kroll individually for breach of contract, misrepresentation, and violation of G.L.c. 93A. Following a bench trial, the trial judge found for Cape *24 Painting on its claim and against the Mahers on their counterclaims.[5] The judge awarded Cape Painting $27,622.71 in damages.[6]
The trial judge committed no error.
1. The Mahers first argue that the trial judge erred in awarding Cape Painting $27,622.71 in quantum meruit because this figure, which is partially composed of Cape Painting’s overhead expenses and the undisclosed markup, does not represent the value of the benefit received by the Mahers. There are two forms of quantum meruit: one based on contracts implied in fact, and the other on contracts implied in law. An implied-in-fact contract is a “true contract,” 1 A. CORBIN, CONTRACTS §1.20, at 64 (rev. ed. 1993), that may be “found to exist from the conduct and relations of the parties.” LiDonni, Inc. v. Hart, 355 Mass. 580, 583 (1969). An implied-in-law contract is a “fictitious contract” that is “created by the law for reasons of justice, without any expression of assent and sometimes even against a clear expression of dissent.” CORBIN, supra. See Salamon v. Terra, 394 Mass. 857, 859 (1985).
The distinction between these two forms of recovery is important because they require different remedies. When quantum meruit is based on an implied-in-fact contract, the measure of recovery is the fair value of the plaintiffs services. See, e.g., Oatley v. Duprey, 312 Mass. 281, 285-286 (1942); Vickery v. Ritchie, 202 Mass. 247, 252 (1909). See also 1 D.B. DOBBS, REMEDIES §4.2(3), at 583 (2d ed. 1993). On the other hand, when quantum meruit is based on an implied-in-law contract, the measure of recovery is not the loss by the plaintiff, but rather the gain by the defendant. See Salamon, supra at 859. The basis for the award is restitution, i.e., preventing the “unjust enrichment of one party and unjust detriment to the other party.” Id. See 1 G.E. PALMER, RESTITUTION §1.1, at 2 (1978).
After finding no express contract, the trial judge did not specify whether she based her award on a contract implied in fact or in law. Instead, she appears to have combined the two forms of quantum meruit, concluding that the Mahers’ unpaid balance represented “both the fair and reasonable value of the services rendered *25 by the contractor and a fair and reasonable benefit conferred upon the homeowner.” This approach was sound. See generally C.S. Kovacic, A Proposal to Simplify Quantum Meruit Litigation, 35 Am. U.L. Rev. 547, 557 (1986) (‘The value of the plaintiffs services measures the defendant’s gain when the defendant requests the work: the defendant’s benefit is receiving what he or she requested. [T]hose requested services have a market value.”).
The Mahers’ reliance upon Fitzgerald v. Allen, 128 Mass. 232 (1880) is misplaced. Fitzgerald does not require a court, in the absence of an express contract, to award quantum meruit based on the value of the benefit received by the defendant. Rather, it requires a court to do so only when an express contract has been breached by any means other than the voluntary refusal of the plaintiff to perform. Id. at 233. In such circumstances, the court is foreclosed from creating an implied-in-fact contract and must base its award of a contract implied in law. See Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 85 (1956) (‘The law will not imply a contract where there is an existing express contract covering the same subject matter.”). Here, the parties did not enter into an express contract; therefore, the trial judge’s quantum meruit award need not have been limited to the benefit received by the Mahers.
Peabody N.E., Inc. v. Marshfield, 426 Mass. 436 (1998) is also distinguishable. There, the Supreme Judicial Court held that the trial court properly excluded from its quantum meruit award the plaintiffs overhead expenses incurred between dates that the plaintiff refused to perform additional work. Id. at 443. Here, by contrast, it is undisputed that Cape Painting incurred its overhead expenses while working on the Mahers’ house.
2. The Mahers next argue that the trial judge erred in holding that neither Cape Painting nor Kroll negligently misrepresented the cost estimate of the project. To recover for negligent misrepresentation, the plaintiffs had to prove that the defendants “(1) in the course of [their] business, (2) supplie[d] false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care or competence in obtaining or communicating the information.” Nola Constr. Corp. v. Keyes Assocs., Inc., 45 Mass. App. Ct. 15, 19-20 (1998). “Whether a declaration constitutes an actionable misrepresentation is a question of fact....” Montello v. Smith, 1992 Mass. App. Div. 244, 246, citing Coe v. Ware, 271 Mass. 570, 573 (1930).
The Mahers failed to make this showing. First, the Mahers presented no evidence that Cape Painting’s cost estimate was false at the time it was given. At trial, Mr. Maher testified that he interpreted “bare starters and up” to mean that “we would have a place that we could live in that had plumbing, electrical, air conditioning, flooring, painting,” and that “[r]eading the estimate and putting some sense to the and up, thinking of contingencies of 10,15 percent and up, I thought we had a job that was somewhere around $150,000.... [TJerminology aside, I felt that I had ... an estimate contract, if there’s such a thing.” Kroll, for his part, testified that “and up” included all work beyond the framing, such as insulation, heating, electrical, plumbing, bathrooms, finish floors, and stairways. He also testified that his estimate did not include the cost of lumber. That the parties ascribed different meanings to the estimate did not make it false. Instead, the trial judge could properly have found that Cape Painting’s initial estimate was its best estimate of the *26 cost of the project based on an incomplete plan.
Second, to prevail on their claim of negligent misrepresentation, the Mahers bore the burden of demonstrating “justifiable reliance” on Cape Painting’s estimate. Nota Constr. Corp., supra at 20. Such reliance must be “reasonable and justifiable under the circumstances.” Collins v. Huculak, 57 Mass. App. Ct. 387, 391 (2003). The question of whether reliance is reasonable is generally one of fact. Coughlin v. Gascombe, 2000 Mass. App. Div. 321, 324. Here, the trial judge noted in her decision that “[i]n one of the early e[-jmails concerning the renovation project..., Kroll informed [Mr.] Maher that the ‘real pricing is in the details/layout/finish[.]’” She also found that Kroll based his estimate on a plan that lacked several specifications, and that he received these details only as the project progressed. In view of Kroll’s early warning to the Mahers of where the “real pricing” lies, the judge could properly have found unreasonable the Mahers’ reliance on an estimate based on a plan devoid of specifications.
3. The Mahers finally argue that the trial judge erred in finding that the defendants did not violate G.L.c. 93A by “ low-bailing” the estimate, failing to disclose the 30-40% markup, and violating G.L.c. 142A, §§2 and 17(17). Nevertheless, the Mahers did not prove their claims of low-balling and nondisclosure to the satisfaction of the trial judge, and we see no reason in the record to disturb the judge’s conclusion. See Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 825 (1982).
As to G.L.c. 142A, that chapter requires agreements to perform residential contracting services in excess of one thousand dollars to be in writing, §2(a), and to include “the total amount agreed to be paid for the work to be performed.” §2 (a) (5). Section 17(17) further provides that the failure to do so constitutes an unfair and deceptive act under G.L.c. 93A. Here, it is undisputed that Cape Painting violated G.L.c. 142A, §§2(a) and 2(a)(5) by failing to provide the Mahers with a written contract that included the total agreed cost of the project,[7] and that Cape Painting thus committed an unfair and deceptive act. To constitute a G.L.c. 93A violation, however, Cape Painting’s unfair and deceptive act must have caused the Mahers some kind of loss. Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 802 (2006).
The determination of causation is generally a question of fact. Johnson v. Summers, 411 Mass. 82, 88 (1991). We must not disturb a trial judge’s findings of fact in a G.L.c. 93A claim unless the findings are clearly erroneous. Clegg v. Butler, 424 Mass. 413, 420 (1997). Here, the Mahers’ claim of injury is their payment of the 30-43% markup that Cape Painting added to its labor and materials, and to the bills submitted by its subcontractors. The Mahers presented no evidence, however, that they were worse off than they would have been had Cape Painting complied with G.L.c. 142A, §§2(a) and 2(a) (5). They failed to present evidence, in other *27 words, that they would not have paid a markup if Cape Painting had provided them with a written contract including the total agreed cost of the project.
Judgment affirmed.
So ordered.

 The estimate provided: “Pricing without complete plans and specs is probably on the level of setting ones self [sic] up for a fall. Pricing I come up with (family conflicts aside) for the first floor could be $20K, $30K, and up, up, up .... The Second floor would be $85-90K range as bare minimum starters and Up....”

 Mr. Maher wrote to Kroll asking the following: Whether there was “an end in sight costwise“; “When does ‘and up’ become ‘final?”; and, finally, “Recognizing add on charges and accommodations provided, I would like you to consider capping your billing at [$]243,930, verifying my payments of [$]219,538 leaving a difference of $24,392 to be reduced in whole or part via discussion and negotiation.”

 In her written opinion, the trial judge framed the issue as whether “in the absence of an express agreement, there was substantial performance of the work requested and whether the amount charged represented both the fair and reasonable value of the services rendered by the contractor and a fair and reasonable benefit conferred upon the homeowner.” The judge found that Mr. Maher paid “scant attention to the fact that as the scope of the project increased, the cost and, necessarily, Kroll’s profit increased as well,” and that “[h]e entered into a wide open arrangement whereby Kroll was free to charge as he went along, and he did.” She further found that “the project was skillfully and professionally undertaken and the completed renovation [was] not only beautiful but in keeping with all of [Mr.] Maher’s requests.” The judge concluded, ‘The value of the services and the benefit to the owner were fair and reasonable under all the circumstances.”

 To account for the difference between Cape Painting’s request and the amount she awarded, the judge wrote that “for the week ending February 9, 2005 [Cape Painting’s] bill was in error. The correct bill, based on Kroll’s usual billing practices, should have been $2,886.”

 General Laws c. 142A, §3 (a) provides that “[ajny party may bring an action to enforce any provision of this chapter, or to seek damages subject to the provisions of this chapter, in ... the district court. ...” Although it is unclear why the Mahers were not awarded damages for Cape Painting’s failure to provide a written contract in violation of §2, that issue is not before us on appeal.