Greco, PJ.
Advanced Spine Centers, Inc. (“Advanced Spine”) has appealed the allowance of summary judgment, pursuant to Mass. R. Civ. P., Rule 56(c), in favor of Commerce Insurance Company (“Commerce”). Advanced Spine, as the unpaid parly, sought Personal Injury Protection (“PIP”) benefits for chiropractic services rendered to Kimlang Chea (“Chea”). In its motion for summary judgment and supporting affidavits, Commerce argued that Chea failed to cooperate with Commerce in its investigation of the underlying accident by failing to appear for an examination under oath (“EUO”). See Lorenzo-Martinez v. Safety Ins. Co., 58 Mass. App. Ct. 359, 363 (2003) (“[Ujnexused refusal to submit to an examination under oath ... constitutes a material breach of the insurance contract discharging the insurer’s liability under the contract.”).
Commerce alleged that Chea was a passenger in a vehicle owned by Yuchheng Tien (‘Tien”), which was insured by Commerce. In support of its summary judgment motion, Commerce submitted the affidavit of Kathleen Bourdon, Commerce’s “Claims Professional” for Chea’s claim and the keeper of the records “for the claim file that is the subject of this litigation.” According to those records, Chea had represented in her insurance claim that she was a passenger in Tien’s vehicle at the time of the alleged accident; that Commerce denied the claim on the ground that Chea failed to attend an EUO; and that Barry Kane (“Kane”) was Chea’s attorney. Commerce also presented Attorney Kane’s affidavit, dated December 24,2010, stating that he represented Chea along with ten other individuals in Tien’s vehicle at the time of the alleged accident on March 1, 2005. Kane acknowledged that Commerce requested that all eleven of Kane’s clients appear for EUOs on April 18 and 29,2005. Kane thereafter rescheduled those examinations to June 21-23,2005, and then again to July 13-14, 2005. He also acknowledged that on September 29, 2005, Commerce advised him that PIP benefits would not be paid to his clients “due to their failure to cooperate by appearing for examinations under oath.”
Commerce also submitted the affidavit of Attorney Bruce Medoff (“Medoff’) in *74 which he stated that he was employed by the Law Offices of Smith & Brink, which represented Commerce in this matter; that he supervised Attorney Karen Kogachi (“Kogachi”), who was assigned to this claim; and that Kogachi left the firm in 2007 to practice law in Hawaii. Attached to Medoff s affidavit was a letter dated June 22, 2005, purporting to be from Kogachi to Kane, in which Kogachi sought “to confirm our telephone conference on June 21,2005 wherein [Kane] advised that [his] clients no longer wished to pursue their claims” for PIP benefits arising out of the March 1st accident, and “to further confirm that during [a] telephone conference on June 21,2005” between Kogachi and Kane, Kane “advised that [his] clients did not intend to appear for any Examinations Under Oath scheduled for June 22, 2005.” Finally, Kogachi stated in the letter that she appeared at Smith & Brink’s offices in Danvers on June 22, 2005 at 9:00 AM “for the purpose of making a statement on the record regarding [Kane’s] clients’ decision not to pursue” their claims arising out of the March 1st accident, and that the EUOs scheduled for June and July were canceled. Kogachi closed her letter as follows: “Please contact me immediately in the event the foregoing fails to accurately memorialize the matters discussed during our telephone conference on June 21, 2005.”
The issue here is whether Commerce satisfied its burden under Rule 56 of showing that there were no genuine issues of material fact, and that it was entitled to judgment as a matter of law. “A party moving for summary judgment in a case in which the opposing party has the burden of proof at trial [as is the case here] is entitled to summary judgment if [it] demonstrates, by reference to pleadings, other discovery or affidavits, unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that parly’s case.” McLaughlin v. CGU Ins. Co., 445 Mass. 815, 818 (2006). Only if Commerce made such a showing would the burden then shift to Advanced Spine to “allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
Commerce relied on the affidavits discussed above in seeking summary judgment. To shift its Rule 56 burden to Advanced Spine, Commerce’s affidavits must have been “made on personal knowledge, [must have] set forth such facts as would be admissible in evidence, and [must have] show[n] affirmatively that the affiant is competent to testify to the matters stated therein.” Rule 56(e).[2] As this Division noted in Duffy v. Commerce Ins. Co., 2009 Mass. App. Div. 196, “[a] useful rough test for evaluating the evidentiary sufficiency of any affidavit is simply: If the affiant were in court, testifying word-for-word in accordance with the contents of the affidavit, would the judge sustain an objection on any ground whatsoever? If the answer is Yes’ or even ‘Probably,’ the affidavit is at risk.” Id. at 198, quoting J.W. SMITH & H.B. ZOBEL, RULES PRACTICE §56.6 at 281 (2d ed. 2007). Using this test, if Medoff were called as a witness, he would not be allowed to testify, on the basis of his own personal knowledge, that Kogachi had a June 21, 2005 telephone conversation with Kane, Chea’s attorney, during which Kane represented that Chea decided not to pursue her PIP claim and that she did not intend to appear for the examina *75 tion under oath.[3] Medoff would also not be allowed testify, on the basis of his own personal knowledge, either that Kogachi on the following day sent Kane a letter confirming the prior conversation, or that she appeared at the Smith & Brink offices on June 22nd to make a statement on the record canceling the examinations as a result of her communications with Kane.
However, the analysis does not stop there. Medoff attached a copy of Kogachi’s June 22nd letter to Kane, thereby raising the question whether the letter is admissible as a business document. As stated in the Massachusetts Guide to Evidence, a business record “shall not be inadmissible because it is hearsay or self-serving if the court finds that (i) the entry, writing, or record was made in good faith; (ii) it was made in the regular course of business; (iii) it was made before the beginning of the civil... proceeding in which it is offered; and (iv) it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter.” Mass. G. Evid. §803(6) (A), at 253 (2012). See, however, Wingate v. Emory Air Freight Corp., 11 Mass. App. Ct. 982, 983 (1981), S.C., 385 Mass. 402 (1982), cited in McLaughlin, supra at 819, where the Appeals Court stated that G.L.c. 233, §78, upon which the above rule is based, “should be interpreted liberally to permit the receipt of relevant evidence.” In McLaughlin, the Appeals Court also noted that §78 “makes it clear that the personal knowledge of the entrant or maker of a record is a matter affecting the weight rather than the admissibility of the record.” Id. In this case, Kogachi’s letter of June 22, 2005 qualified as a business record. There is no indication that it was made in bad faith. Throughout the course of this claim, Kogachi had cooperated with Kane in his requests to reschedule the EUOs. The information in the letter concerned matters that would be chronicled in an insurance company’s records, and the letter had been written over five years before the complaint was filed. At that point, there was no indication of a conflict between the parties, or that Commerce had disputed the claim merely by seeking an EUO. Moreover, to the extent that the letter served only to put Kane on notice that Commerce understood that the injured parties, including Chea, intended not to appear for their examinations, the letter was not being admitted for its truth and was not therefore hearsay.[4] In a context where there *76 is no indication that Chea subsequently appeared for an examination, and where Kane failed to respond to Kogachi’s letter or object in any way to the claim being closed, the motion judge could draw the inference that Chea did not intend to undergo an EUO.[5] Kane’s inaction and failure to respond to Kogachi’s letter could have been construed as an admission by silence. As stated in the notes to Mass. G. Evid., supra at §801 (d)(2)(B), at 245, “[f]or an admission by silence to be admissible it must be apparent that the party has heard and understood the statement, had an opportunity to respond, and the context was one in which the parly would have been expected to respond.” While Kogachi’s letter was not sent to Chea or to Advanced Spine, it was sent to Kane who presumably was authorized to speak (or to fail to speak) for his client Chea. See id. at §801 (d) (2) (D), at 237. Kane was being told that his client was not going to be compensated, and yet he took no action to set the record straight — conduct consistent with Kogachi’s understanding of Chea’s intent.[5] The inferences that could be drawn from this admittedly circumstantial evidence were sufficient to shift the burden to respond in a motion for summary judgment. Advanced Spine failed to offer anything in response to establish the existence of a genuine issue of material fact.
Accordingly, the judgment of the trial court is affirmed.
So ordered.

 As required, Advanced Spine moved to strike the affidavits, which motion was denied.

 It should be noted that any services rendered by Advanced Spine allegedly took place between March 1, 2005 and May 31, 2005. In such a case, Advanced Spine potentially had a cause of action at that point. However, evidence that Chea had no intention of appearing for the EUO would have been relevant to Commerce’s defense of failure to cooperate.

 See M.S. BRODIN & M. AVERY, MASSACHUSETTS EVIDENCE (8th ed. 2007), where it was stated that “[a]n extrajudicial statement is not hearsay when offered to prove that the person to whom it was addressed had notice or knowledge of the contents of the statement. A party’s knowledge of the contents of statements must be material for them to be admissible on this basis.” Id. at §8.2.2, at 482. See also Pardo v. General Hosp. Corp., 446 Mass. 1 (2006), where the Supreme Judicial Court found no error in the admission of a memorandum and letter from one doctor to another doctor “to prove only that the person to whom these materials were addressed... had notice or knowledge of their contents.” Id. at 18. Citing Commonwealth v. Rosario, 430 Mass. 505, 508 n.3 (1999), the Court noted in Prado that while ‘“a greater level of scrutiny of hearsay statements’ is required in ‘the case of criminal trials’... this exacting scrutiny is not required” in a civil case. Id. at 18 n.31.

 In his affidavit, dated December 24, 2010, Kane reviewed the history of Chea’s claim from March 1, 2005 through September 29, 2005. He indicated an awareness that Commerce was not paying benefits “due to [his clients’] failure to cooperate.” He in no way, however, challenged the validity of Commerce’s decision as would be expected if his clients were in fact pursuing their claims. “Under some circumstances, a person’s silence may be as probative as a statement. Of course, silence may also be ambiguous in the absence of cross-examination. Silence is admissible if offered against a hearsay objection if used as circumstantial evidence to support an inference, but inadmissible as an implicit assertion.” M.S. BRODIN & M. AVERY, MASSACHUSETTS EVIDENCE, supra at §8.2.7, at 490. See also RESTATEMENT (SECOND) OF AGENCY §268(1) (a), at 582 (1958), where it was stated that “a notification given to an agent is notice to the principal if it is given... to an agent authorized to receive it.”

 In his affidavit, Attorney Kane acknowledged receiving Kogachi’s letter of September 29, 2005, but did not in any way contradict its substance.